# EXHIBIT 5

## Consulting Agreement

This **Consulting Agreement** (the "**Agreement**") is effective as of November 15, 2019 (the "**Effective Date**") by and among ASH-Grayhawk, LLC, a Virginia limited liability company (the "**Company**"), **American Southern Homes Holdings LLC** ("**ASH**") and **David B. Erickson** ("**Erickson**").  All capitalized terms used herein and not otherwise defined shall have the same meaning as set forth in the APA, as defined below.

**WHEREAS** this Agreement is entered into pursuant to an Asset Purchase Agreement (the "**APA**"), dated November 15, 2019, by and among the Company, ASH and others, including Erickson and **Grayhawk Homes, Inc.** ("**Grayhawk Homes**");

**WHEREAS** the Company desires to obtain the consulting services of Erickson ("**Consulting Services**"), and Erickson desires to provide such Consulting Services to the Company, in accordance with the terms, conditions and provisions of this Agreement at such time as Erickson's Employment Agreement with the Company has terminated pursuant to Sections 2.03 and 7.07 of the Employment Agreement.  As made clear in the APA, it is anticipated that Erickson shall enter into an Employment Agreement with the Company, but it is likely that such employment shall be terminated once a successor is identified, trained, and in place; and

**WHEREAS** the Company and ASH require, as a condition to the Company's utilizing Erickson as a consultant, that Erickson provide to the Company, in addition to the Consulting Services, the confidentiality and other protections set forth herein;

**NOW THEREFORE**, in consideration of the covenants and mutual agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in reliance upon the representations, covenants and mutual agreements contained herein, the Company, ASH and Erickson agree as follows:

### Agreement

1.  **Consulting**.

    A.    Subject to the terms and conditions of this Agreement, the Company agrees to utilize Erickson as its primary consultant for the ongoing operations of the Company as contemplated by the APA, and Erickson agrees to diligently perform the services associated with such role.  The Consulting Services shall include responding to requests from Company personnel for advice and coordination of land purchases, accounting logistics, and general decision making; provided, however, that Erickson shall communicate any proposed changes to the business or its personnel, projects, or products only to the Company's President or ASH. Further, the Consulting Services may include utilizing Erickson to perform services for ASH, separate and apart from his work for the Company.

    B.    Erickson will devote such time as may be reasonably required by the Company to the Consulting Services, but no more than 192 hours in any twelve month period, except by mutual agreement or pursuant to Section 1.C.  All such services shall be scheduled by

mutual agreement as to time and location. Erickson shall, at all times, be an independent contractor of the Company.

      C.    In the event the Company's President (i.e., Erickson's successor) resigns within one year after the Effective Date, Erickson agrees that, upon the Company's request, the Consulting Services shall include up to thirty hours per week for a period of up to three months, during which time Erickson shall assist the Company with its day-to-day operations and with identifying, hiring, and training a new President.

      **2.**    **Term**. Erickson will be engaged under this Agreement for a term beginning the day after the termination of the Employment Agreement pursuant to Sections 2.03 and 7.07 of the Employment Agreement and ending on the second anniversary of that date, unless Erickson's services are extended by agreement or terminated earlier pursuant to <u>Section 4</u>.

      **3.**    **Base Fee and Benefits**.

      A.    Company will pay Erickson an annual base fee of $48,000 (representing two eight-hour days per month at $2,000 per day, or 16 hours per month at $250 per hour) (the "**Annual Base Fee**"), payable monthly, pro-rated into twelve equal installments. Erickson will bill any additional time for Consulting Services, including pursuant to <u>Section 1.C</u>, at a rate of $250 per hour. Travel outside of the geographic area in which the Company does business will be deemed a $1,500 fee. None of Erickson's fees under this Agreement will be subject to deductions or withholding, and Erickson will be responsible for the payment of any and all taxes associated with such fees. Erickson's compensation will be reported to the Internal Revenue Service on a Form 1099.

      B.    The Company will pay Erickson an additional fee equal to the cost of maintaining individual health insurance policies for himself and his spouse, in an amount not to exceed $1,000 per month.

      C.    Except as otherwise provided in this section, Erickson shall not be entitled to receive any employment benefits from Company and shall not be eligible to participate in any benefit programs that Company currently provides or may someday provide for its employees, including but not limited to vacation, paid holidays, sick leave, health insurance, life insurance, pension or retirement plans, disability programs, or other benefits, benefit plans or benefit programs.

      D.    The Company shall reimburse Erickson for all reasonable out-of-pocket expenses incurred by Erickson in providing the Consulting Services, including reimbursement for expenses, mileage, and meals during travel outside of the geographic area in which the Company does business.

      **4.**    **Termination.**

      A.    If the Company discharges Erickson for Cause (as defined below), or Erickson voluntarily terminates, dies or becomes Disabled (as defined below), then the obligations of the Company and ASH to pay his consulting fee pursuant to this Agreement will

terminate immediately, except for the pro-rated payment for the month in which the Date of Termination is triggered and payment owed by the Company for any time previously billed.

B.     If Erickson's consulting services with the Company are terminated by the Company without Cause, then the Company will be obligated to pay the Annual Base Fee and and health insurance reimbursement for the remainder of the term of this Agreement.

For purposes of this Agreement,

(1)     "**Cause**" is defined to mean (i) Erickson's misappropriation of any money, assets or properties of the Company, resulting, or intended to result, directly or indirectly, in personal gain or enrichment to Erickson; (ii) the indictment or conviction of Erickson of any felony (or significant misdemeanor); (iii) Erickson's conduct involving fraud, moral turpitude, dishonesty, misconduct, embezzlement, theft, or similar matters that are detrimental to the Company; (iv) Erickson's disregard of his primary duties to the Company; (v) breach of this Agreement or his non-competition obligations set forth in the APA; or (vi) termination by Buyer of the Land Purchase Agreement as a result of an uncured breach of the Land Purchase Agreement (as more fully set forth in Section 35 therein).

(2)     "**Disabled**" or "**Disability**" means a disability (as reasonably determined by a physician acceptable to the Company) that results in Erickson being unable substantially to fulfill his duties under this Agreement for 90 consecutive days.

(3)     "**Date of Termination**" shall mean (i) if the Agreement is terminated as a result of Erickson's death, the date of Erickson's death, (ii) if the Agreement is voluntarily terminated by Erickson, the date on which he delivers a notice of termination to the Company, (iii) if this Agreement is terminated as a result of Disability, the date a notice of termination is given, or (iv) if Erickson's employment is terminated by the Company for any other reason, the date on which a notice of termination is given to Erickson.

(4)     **Severability**.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under any applicable law, then such provision will be deemed to be modified to the minimum extent necessary to render it legal, valid and enforceable, and if no such modification will render it legal, valid and enforceable, then this Agreement will be construed as if not containing the provision held to be invalid, and the rights and obligations of the parties will be construed and enforced accordingly.

**5.**     **Enforcement and Waiver**.  Erickson acknowledges and agrees that the Company and ASH would be irreparably harmed by any violation of Erickson's obligations under this Agreement and that, in addition to all other rights or remedies available at law or in equity, the Company and ASH will be entitled to injunctive and other equitable relief, without bond or security therefore.  For avoidance of doubt, in the event of the breach of any provision hereof, ASH and the Company, individually or collectively, may seek any right or remedy against Erickson except as limited by the APA.  In the event of any suit or action with respect to this Agreement, the prevailing party shall be entitled to all its reasonable costs and expenses, including attorneys' fees.  The waiver by either party of a breach of any provision of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach.

6. **Assignment by Company**. Nothing in this Agreement shall preclude Company from consolidating or merging into or with, or selling or transferring all or substantially all of its assets to, another corporation or entity that assumes this Agreement and all obligations and undertakings hereunder. Upon such consolidation, merger, sale, or transfer of assets and assumption, the term "**Company**" as used herein shall mean such other corporation or entity, as appropriate, and this Agreement shall continue in full force and effect. This Agreement may not be assigned by Erickson.

7. **Confidentiality**. Erickson acknowledges that, in the performance of the Consulting Services under this Agreement, he will receive or have access to certain non-public, proprietary and/or confidential information relating to the business and affairs of the Company and/or ASH, including trade secrets, know how, research and development, databases, software, and other intellectual property; information concerning personnel, compensation, recruiting, and training; and information concerning the past, future, or current business of the Company, activities and operations of the Company and/or ASH, including customers, clients, suppliers, contractors, products and prices (the "**Confidential Information**"). Erickson agrees and acknowledges that such Confidential Information shall be subject to the terms and obligations described in Article 6.00 of the Employment Agreement, and that such terms and obligations shall survive the termination of this Agreement for a period of one year.

8. **Entire Agreement**. Except as otherwise provided herein, this Agreement embodies the complete agreement of the parties hereto with respect to the subject matter hereof and supersedes any prior written, or prior or contemporaneous oral, understandings or agreements between the parties that may have related in any way to the subject matter hereof. This Agreement may be amended only in writing executed by the Company and Erickson.

9. **Governing Law**. This Agreement and all questions relating to its validity, interpretation, performance and enforcement, shall be governed by and construed in accordance with the internal laws, and not the law of conflicts, of the State of Georgia.

10. **Notice**. Any notice required or permitted under this Agreement must be in writing and will be deemed to have been given by electronic mail or when delivered personally or by overnight courier service or three days after being sent by U.S. certified or registered mail, postage prepaid, at the address indicated below or to such changed address as such person may subsequently give such notice of:

<table>
<tr><td>If to Erickson:</td><td>David B. Erickson<br>324 Otter Drive<br>Cataula, GA 31804</td></tr>
<tr><td>With a copy to:</td><td>The Sack Law Firm P.C.<br>8270 Greensboro Drive, Suite 810<br>McLean, Virginia 22102<br>Phone: (703) 883-0102<br>E-mail: jms@sacklaw.com<br>Attn: James M. Sack, Esq.</td></tr>
</table>

If to Company or ASH:

American Southern Homes
c/o Michael Scott
Norton Scott LLC
1420 Beverly Road, Suite 240
McLean, VA 22101
Phone: (703) 738-8736
E-mail: mike@nortonscott.com

and

Greg Benson
21630 Ridgetop Circle, Suite 120
Sterling, VA 20166
Phone: (703) 863-5070
E-mail: gbenson@benmarlc.com

With a copy to:

Jacob A. Kramer
Bryan Cave Leighton Paisner LLP
1155 F Street NW, Suite 700
Washington, DC 20004
Phone: (202) 508-6153
E-mail: jake.kramer@bclplaw.com

**11.** **Jurisdiction, Venue and Waiver of Jury Trial.** The parties hereby consent to jurisdiction in Georgia for the purpose of any litigation relating to this Agreement and agree that any litigation by or involving them relating to this Agreement shall be brought in Columbus, Georgia. The parties agree that jurisdiction and venue in Columbus, Georgia are proper and waive any defense based upon jurisdiction and venue. The parties further agree that to the fullest extent permitted by law, each party hereby irrevocably waives his or its right to trial by jury on all issues that are subject to the right to a jury. *The parties make this waiver of a trial by jury intentionally, knowingly, voluntarily and free from fraud, duress and coercion.* The parties recognize the benefits and disadvantages of a trial by jury and elect to waive their right to a jury and do so in consultation with counsel.

**12.** **Assignability.** This Agreement is assignable by the Company, without Erickson's consent, in connection with any reorganization of ASH, provided that there is no material change in any of the terms and conditions of the Consulting Services and/or this Agreement. Erickson may not assign, transfer, pledge or encumber Erickson's interest in this Agreement nor assign any of his rights or duties under this Agreement without the prior written consent of the Company.

**13.** **Waiver of Breach.** The Company's or Erickson's waiver of any breach of a provision of this Agreement shall not waive any subsequent breach by the other party.

    **14.**    **Survival of Provisions.**  Notwithstanding the termination of this Agreement for any reason whatsoever, the provisions of Sections 4, 5, 7, 10, and 11, inclusive, of this Agreement and any other provisions of this Agreement necessary to give efficacy thereto shall continue in full and force and effect following such termination.

    **15.**    **Executive's Acknowledgement.**  The Executive acknowledges that he: (i) has had sufficient time to review and consider this Agreement thoroughly; (ii) has read and understands the terms of this Agreement and his obligations hereunder; (iii) has had the opportunity to seek independent legal advice concerning the interpretation and effect of this Agreement prior to the execution and delivery of this Agreement, and (iv) has voluntarily entered into this Agreement.

    **16.**    **Counterparts**.  This Agreement may be executed in counterparts, all of which together shall constitute one fully-executed agreement, and by signature to facsimile (fax) or electronic transmittal documents, and such signature shall be deemed to constitute an original signature for such party.

[Signature page to follow]

**IN WITNESS WHEREOF**, the Company and Erickson have executed and delivered this Agreement as of the date first above written.

**ASH-Grayhawk, LLC**
a Virginia limited liability company

By: _____
　　　Gregory Benson, CEO

**Consultant**:

_____
David B. Erickson

**Guaranteed By:**

**American Southern Homes Holdings, LLC**

By: _____
　　　J. Marshall Coleman, Authorized Officer

**IN WITNESS WHEREOF**, the Company and Erickson have executed and delivered this Agreement as of the date first above written.

ASH-Grayhawk, LLC
a Virginia limited liability company

By: _____

    Gregory Benson, CEO

**Consultant**:

_____

David B. Erickson

**Guaranteed By:**

**American Southern Homes Holdings, LLC**

By: _____

    J. Marshall Coleman, Authorized Officer