# EXHIBIT 6

## **EMPLOYMENT AGREEMENT**

This Employment Agreement is made as of the Effective Date by and among ASH-Grayhawk, LLC, a Virginia limited liability company (the "**Employer**"), American Southern Homes Holdings LLC ("**ASH**") and David B. Erickson ("**Executive**").

**WHEREAS** the Employer proposes to employ the Executive and the Executive wishes to be employed by the Employer, all upon and subject to the provisions of this Agreement; and

**WHEREAS** the Executive is, pursuant to a separate Asset Purchase Agreement ("**APA**") selling to Employer substantially all of the operating assets of Grayhawk Homes, Inc. and related entities ("**Grayhawk Transaction**"); and

**WHEREAS** this Agreement arises from and is inextricably linked to, the APA and the Grayhawk Transaction.

**NOW THEREFORE** this Agreement witnesses that in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### **1.00 – DEFINITIONS AND INTERPRETATION**

1.01  Definitions. The following terms shall have, for the purposes of this Agreement, the meanings set forth below:

(a) "**Agreement**" means this agreement made between the Employer and the Executive as of the Effective Date.

(b) "**Business**" or "**Business of the Employer**" means the business of building and marketing residential communities and projects carried on by Employer and by American Southern Homes ("**ASH**"), the parent of Employer, and businesses reasonably ancillary thereto.

(c) "**Business Day**" means any day other than a Saturday, Sunday or statutory or civic holiday in the State of Georgia.

(d) "**Confidential Information**" has the meaning ascribed thereto in Section 6.01.

(e) "**Effective Date**" means the first business day after the Closing Date (as that term is defined in the APA) of the Grayhawk Transaction.

(f) "**Employer**" means the corporation designated as Employer at the outset of this Agreement.

(g) "**Executive**" means the individual designated as Executive at the outset of this Agreement.

(h) "**includes**" and "**including**" mean includes without limitation and including without limitation, as the case may be.

(i) "**Person**" means an individual, partnership, corporation, limited liability company, trust, unincorporated association, joint venture or other entity, or a government or any political subdivision or agency thereof.

(j) "**Severance Payments**" means payment(s) made upon termination without cause in accordance with Section 7.04.

1.02    Headings.  The headings of the articles and sections of this Agreement are inserted for convenience of reference only and shall not affect its construction or interpretation.

1.03    Number/Gender.  In this Agreement words importing the singular number only shall include the plural and vice versa and words importing gender include all genders.

1.04    Currency.  All expressions of currency in this Agreement refer to US dollars.

1.05    Partial Invalidity.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under any applicable law, then such provision will be deemed to be modified to the minimum extent necessary to render it legal, valid and enforceable, and if no such modification will render it legal, valid and enforceable, then this Agreement will be construed as if not containing the provision held to be invalid, and the rights and obligations of the parties will be construed and enforced accordingly.

1.06    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia and the federal laws of the United States applicable therein.

### 2.00 - EMPLOYMENT OF EMPLOYEE, POSITION AND DUTIES

2.01    Employment of Executive.  The Employer appoints the Executive to undertake the duties as and exercise the powers of President of Employer, working from Employer's offices in Columbus, Georgia.  The Executive accepts such appointment and employment, upon the terms and conditions set forth in this Agreement, and agrees to serve the Employer in such capacity.

2.02    Duties of Executive.  The Executive shall perform the duties and exercise the functions of the President of Employer and any other related duties as may be determined from time to time by ASH or its representative (currently Greg Benson) in consultation with the Executive.  The Executive shall devote substantially all of his business time to Employer and

shall perform all duties and exercise his functions diligently, faithfully and in an honest manner and to the best of the Executive's ability. The Executive will use his best efforts to promote the legitimate interests of Employer and ASH, and the Executive shall at all times promote the reputation and interests of Employer and ASH and its corporate affiliates, including with customers, vendors, lenders, investors, realtors, land sellers, subcontractors, and employees.

2.03         Transition Role. The parties agree and acknowledge that Executive is playing a transitional role and, as contemplated by the APA, will serve until a qualified President can be identified and hired following the Closing Date (as that term is defined in the APA) of the Grayhawk transaction. Thereafter, Executive shall train and serve as a mentor to his successor. This Agreement shall then terminate pursuant to Section 7.07, at which time Executive will become a consultant to the Employer and/or ASH pursuant to a separate agreement (the "**Consulting Agreement**").

2.04         Encumbrances. By entering into this Agreement, and except as otherwise provided in the APA or as part of the Grayhawk Transaction, the Executive represents and warrants that he is not currently or about to become subject to any contract or obligation, either expressed or implied, with his current or previous employer, which could in any way restrict his employment with the Employer. Executive shall, as contemplated by the APA, bring all written materials and information from Grayhawk Homes Inc. and/or Homestead Residential Inc. and/or GH Services Inc. to be utilized on behalf of Employer and ASH.

2.05         Reporting. Until further notice from the Employer, the Executive will, in the performance of his duties, report to ASH or its representative (currently Greg Benson).

2.06         Adherence to Policies. The Executive will discharge his responsibilities within the framework of delegated authorities and consistent with the policies and procedures of the Employer. Except as specifically provided in this Agreement and/or the APA and/or the Grayhawk Transaction, the Executive further agrees to adhere to all properly constituted policies of general application to ASH employees, including any codes of conduct developed for application to ASH employees generally, as the same may be revised and updated from time to time.

### 3.00 - TERM

3.01         Maximum Term. The Executive's appointment shall commence as of the Effective Date, and shall continue for no more than six months unless terminated in accordance with the provisions of this Agreement.

### 4.00 - COMPENSATION

4.01         Annual Base Salary. The Employer agrees to pay the Executive a base salary of $350,000 per annum (the "**Base Salary**"). Base Salary will be deemed to accrue from day to day

and will be payable in equal biweekly instalments in arrears, in accordance with prevailing policies or practice of the Employer.

4.01     Deductions from Compensation. All amounts payable as compensation under this Agreement are subject to all applicable tax withholdings and statutory deductions as well as any other amount owed by Executive to Employer or otherwise authorized for deduction by the Executive.

## 5.00 - VACATION/BENEFITS/PERQUISITES

5.01     Vacation. The Executive is entitled to six (6) weeks (30 working days) paid vacation in respect of each calendar year of employment. Vacation entitlement will be pro-rated for any part of a calendar year. In the normal course the Executive will not be entitled to carry over any unused vacation time from a calendar year into the subsequent calendar year, except as permitted under the vacation policy of the Employer. The Executive will take vacation at a time or times reasonable for the Executive and the Employer in the circumstances.

5.02     Benefits. The Executive is entitled to participate in the Employer's group benefit plans and programs currently in effect as follows, subject to the eligibility provisions of such plans and programs:

- (a) Health and dental benefits;
- (b) Life insurance coverage;
- (c) Participation in the Employer's 401(k) plan;
- (d) Short Term & Long Term Disability;
- (e) Vehicle allowance of $800 per month with Executive responsible for all operating and maintenance costs.

5.03     Changes to Benefit Programs. The Executive acknowledges that the terms of Employer's benefit programs are not guaranteed and may change at any time, and the Employer acknowledges and agrees that the Executive will be eligible to participate in any new or modified programs as they apply to executives of Employer and/or ASH, subject to the eligibility provisions of such programs.

5.04     Expense Policy. The Executive will be reimbursed by the Employer for approved expenses, including travel, parking, reasonable entertainment and other necessary business expenses required for and incurred as a result of the Executive's work on behalf of Employer and/or ASH. The Employer will reimburse the Executive for such expenses upon presentation of supporting documentation reasonably satisfactory to the Employer and in accordance with the Employer's established reimbursement policies, as those policies may be modified from time to time in the Employer's discretion.

5.05         Taxable Benefits.  The Executive will be responsible for remitting all required taxes on any taxable benefits provided by the Employer in relation to the Executive's employment, if not already withheld at source.

### 6.00 - CONFIDENTIAL INFORMATION

6.01         Acknowledgement Respecting Confidential Information.  The Executive acknowledges that, in the performance of his duties and responsibilities under this Agreement, the Executive will receive or have access to certain non-public, proprietary and/or confidential information relating to the Business and affairs of Employer and/or ASH, including trade secrets, know-how, research and development, databases, software, and other intellectual property; information concerning personnel, compensation, recruiting, and training; and information concerning the past, future or current Business, activities and operations of Employer and/or ASH, including customers, clients, suppliers, contractors, products and prices (hereinafter referred to as the "**Confidential Information**").

6.02         Non-Disclosure of Confidential Information.  The Executive recognizes and acknowledges the competitive value and confidential and proprietary nature of the Confidential Information to which he will have access in the performance of his duties and responsibilities for Employer and/or ASH and the losses, costs and damages that could result to Employer and/or ASH if any Confidential Information is disclosed to any other Person and in connection therewith the Executive agrees to keep the Confidential Information confidential, to use the Confidential Information only in connection with the carrying out of duties and responsibilities under this Agreement, not to use the Confidential Information after the termination of this Agreement for any reason, and not to disclose any Confidential Information to any Person (other than employees and advisors of Employer and/or ASH who specifically need to know such Confidential Information and who have previously agreed, either as a condition of employment or in order to obtain the Confidential Information, to be bound by terms and conditions substantially similar to those of this Section), in any manner whatsoever, in whole or in part.

6.03         Where No Obligation to Maintain Confidentiality.  The Executive shall have no obligation to maintain as confidential any Confidential Information to the extent that such Confidential Information:

(a) is or becomes publicly known or readily ascertainable by the public, and through no wrongful act of the Executive; or

(b) is received by the Executive from a third party without breaching an obligation owed to any other Person, if the Executive is not restricted by the third party from disclosing such Confidential Information; or

(c) is required by law to be disclosed, provided the Executive shall give prompt written notice to the Employer of such requirements, disclose no more

information than is so required, and cooperate with any attempts by Employer and/or ASH to obtain a protective order or similar treatment.

6.04      Liability for Losses.  The Executive shall be liable to Employer and/or ASH for any actual and demonstrable losses, costs or damages to Employer and/or ASH if any Confidential Information is disclosed by the Executive in breach of this Agreement.

6.05      Irreparable Harm.  The Executive acknowledges and agrees that a breach of the covenants contained in Section 6.02 would result in irreparable harm to the Employer and/or ASH and that monetary damages alone would be an inadequate remedy.  In the event of a breach or threatened breach of Section 6.02, the Employer or ASH shall be entitled to an injunction restraining any such breach or threatened breach, without the necessity of posting a bond or other security, in addition to any other rights or remedies available.

6.06      Survival.  The obligations of the Executive set out in this Article 6.00 shall survive the termination of this Agreement for a period of three (3) years.

## 7.00 - TERMINATION

7.01      Resignation by Executive.  The Executive may resign his employment voluntarily upon giving thirty (30) days prior written notice to the Employer.  Following receipt of such notice, the Employer may relieve the Executive of some or all of his duties and place the Executive on paid administrative leave for all or any part of such thirty-day notice period.  Upon resignation, the Executive shall have no entitlement to compensation except for unpaid Base Salary, payment for unused vacation (if required by Employer policy), and entitlement to expense reimbursement accrued prior to the effective date of resignation.  All of the Executive's benefits shall cease upon the Executive's effective date of resignation, except as may be required under law such as COBRA.

7.02      Death of Executive.  This Agreement shall terminate automatically upon the death of the Executive, and subject to the continued entitlement of the estate to insurance proceeds, if any, the estate of the Executive shall not be entitled to notice or severance or any further compensation or benefits, other than Base Salary, payment for unused vacation (if required by Employer policy), and entitlement to expense reimbursement accrued to the date of the Executive's death.  All of the Executive's benefits shall cease upon the Executive's date of death.

7.03      Termination for Cause.  The Employer may terminate this Agreement at any time for cause without notice.  Upon termination of this Agreement for cause, the Executive will receive unpaid Base Salary, payment for unused vacation (if required by Employer policy), and entitlement to expense reimbursement accrued to the date of termination and which has not been paid at the date of termination.  All of the Executive's benefits shall cease immediately upon termination of this Agreement for cause.

For the purposes of this Agreement, "**cause**" shall include the following conduct by the Executive:

(i) a knowing breach of one or more material provisions of this Agreement by the Executive;

(ii) conviction of the Executive for any criminal offense involving moral turpitude, theft or fraud;

(iii) the Executive or any member of his family makes any personal gain or profit arising out of or in connection with a transaction to which any entity which is part of Employer and/or ASH is a party or with which it is associated without first making disclosure to and obtaining the prior written consent of the Employer (unless such transaction is permitted under the Agreement, the APA or the Grayhawk Transaction);

(iv) any act of dishonesty on the part of the Executive;

(v) the Executive fails to devote substantially all of his business time and effort to Employer;

(vi) the Executive knowingly fails to honor his fiduciary duties to the Employer, including the duty to act in the best interests of Employer and/or ASH; or

(vii) any and all omissions, commissions or other conduct which would constitute cause at law under the applicable Georgia case law or statutes, in addition to the specified causes.

Failure by the Employer to rely upon the provisions of this Section in any given instance or instances shall not constitute a precedent or be deemed a waiver of the Employer's rights under this Section.

7.04   Termination Without Cause.  The Employer may terminate this Agreement at any time without cause upon written notice to the Executive to be effective upon the date specified in such notice.  Upon a termination without cause, the Employer shall provide the Executive with payment of severance in an amount equal to one year's Base Salary, less applicable statutory deductions, which will be paid in accordance with the Employer's usual payroll cycle, and will end on the anniversary date of Executive's termination (the "Severance Payment"); provided, however, that no Severance Payment will be owed or paid unless Executive executes and delivers to Employer a full and final release of all claims against Employer and ASH and related persons in a form reasonably acceptable to Employer which becomes fully effective not later than the sixtieth (60th) day after the effective date of Executive's termination (the "Release").  For the avoidance of doubt, Executive shall not be entitled to a Severance Payment in the event that this Agreement is terminated pursuant to Sections 2.03 and 7.07.

7.05　　　Fair Consideration.　The Executive acknowledges that the payment provisions provided for in Section 7.04 supersede and replace any and all rights to reasonable notice of termination to which Executive might otherwise be entitled.　The Executive further acknowledges that the provisions of Section 7.04 have been freely negotiated in advance between the Employer and the Executive as representing reasonable notice of termination and specifically take into account all amounts owed or owing for notice and/or severance pay arising under contract, statute, common law or otherwise.　Payment of amounts under Section 7.04 is conditional upon the Executive both executing the Release and fully complying with all obligations arising under the employment relationship, including any post-termination obligations, as described in this Agreement.　In the event that the Executive breaches any of the restrictive covenants contained in this Agreement, the Executive agrees to immediately forfeit all of the Severance Payment that has been made to the Executive.

7.06　　　Constructive Discharge.　Executive shall receive a Severance Payment, in the same amount and on the same payment schedule set forth in Section 7.04 and subject to the same conditions set forth in Sections 7.04 and 7.05, if there is a termination of the Executive's employment by the Executive that is found by a court of competent jurisdiction to constitute a constructive discharge as a result of Executive's relocation without his consent to any base of operations other than the Columbus, Georgia Metropolitan Area.

7.07　　　Transition.　After the Employer has identified and hired, and the Executive and others have trained, a qualified President to succeed Executive, as contemplated in Section 2.03, the Employer may terminate this Agreement on a mutually agreed date (or, failing agreement, on a date fixed by Employer and/or ASH), after which time the terms of the Consulting Agreement shall control.　In the event of such termination, the Executive shall have no entitlement to further compensation under this Agreement, except for unpaid Base Salary, payment for unused vacation (if required by Employer policy), and entitlement to expense reimbursement accrued prior to the effective date of termination.

7.08　　　At Will Employment.　Notwithstanding the severance obligations in this Agreement, this Agreement shall not be construed as an agreement, either express or implied, to employ Executive for any stated term, and shall in no way alter the Employer's policy of employment at will, under which both the Executive and the Employer remain free to terminate the employment relationship, with or without cause, at any time, with or without notice. Similarly, nothing in this Agreement, except the obligations provided in Sections 7.04 and 7.06, shall be construed as an agreement, either express or implied, to pay Executive any compensation or grant Executive any benefit beyond the end of Executive's employment with the Employer.

### 8.00 - RETURN OF MATERIALS

8.01　　　All files, forms, brochures, books, materials, written correspondence, memoranda, documents, manuals, computer disks, communications devices, computers, laptops, software

products and lists (including lists of customers, clients, suppliers, contractors, products and prices) pertaining to the Business of the Employer which may come into the possession or control of the Executive shall at all times remain the property of the Employer.  On termination of the Executive's employment for any reason, the Executive agrees to deliver promptly to the Employer all such property of the Employer in the possession of the Executive or directly or indirectly under the control of the Executive.

### 9.00 - NON-DISPARAGEMENT

9.01            In further consideration of the amounts and rights granted to and received by the Executive under this Agreement, the Executive and Employer and/or ASH agree that neither party, during the course of Executive's employment under this Agreement and for five years after Executive ceases to be employed by the Employer, shall utter, publish or broadcast any statements, orally, or in writing, or through any electronic means, that disparage either the Executive or the Employer and/or ASH, or their directors, officers or principal(s), or are critical in any manner or fashion of either the Executive or the Employer and/or ASH, including their business strategy, products, management or employees.

### 10.00 - NON-SOLICITATION

10.01            Reasonable Restrictions.  The Executive recognizes and acknowledges the highly competitive nature of the Business of the Employer and accordingly agrees that the restrictions in this Article are reasonable.

10.02            Restricted Actions.  The Executive shall not be subject to any separate Restricted Actions by reason of this Agreement, but rather shall remain subject to those restrictions as are set forth in Section 6.5 of the APA.

10.03            Deliberately Omitted.

10.04            Controlling Instruments.  To the extent that there are conflicts or inconsistencies between this Agreement and/or the APA, the provisions of the APA shall control.

### 11.00 - GENERAL

11.01            Notice.  Any notice required or permitted under this Agreement must be in writing and will be deemed to have been given by electronic mail or when delivered personally or by overnight courier service or three days after being sent by U.S. certified or registered mail, postage prepaid, at the address indicated below or to such changed address as such person may subsequently give such notice of:

|   |   |
|---|---|
| If to Erickson: | David B. Erickson<br>324 Otter Drive<br>Cataula, GA 31804 |
| With a copy to: | The Sack Law Firm P.C.<br>8270 Greensboro Drive, Suite 810<br>McLean, Virginia 22102<br>Phone: (703) 883-0102<br>E-mail: jms@sacklaw.com<br>Attn: James M. Sack, Esq. |
| If to Employer or ASH: | American Southern Homes<br>c/o Michael Scott<br>Norton Scott LLC<br>1420 Beverly Road, Suite 240<br>McLean, VA 22101<br>Phone: (703) 738-8736<br>E-mail: mike@nortonscott.com<br><br>and<br><br>Greg Benson<br>21630 Ridgetop Circle, Suite 120<br>Sterling, VA 20166<br>Phone: (703) 863-5070<br>E-mail: gbenson@benmarlc.com |
| With a copy to: | Jacob A. Kramer<br>Bryan Cave Leighton Paisner LLP<br>1155 F Street NW, Suite 700<br>Washington, DC 20004<br>Phone: (202) 508-6153<br>E-mail: jake.kramer@bclplaw.com |

11.02    <u>Rendering Assistance</u>.  The Executive agrees that he will, during this Agreement and for a period of five (5) years following the Executive's ceasing to be employed by the Employer, supply such information and render such assistance as may be reasonably required by the Employer or any other entity of ASH in connection with any legal or quasi-legal proceeding to which the Employer or such other entity either is or becomes a party.  The Employer agrees to reimburse the Executive for any expenses reasonably incurred in providing such services.

11.03    <u>Attorney Fees and Costs.</u>  In the event of any action or suit between or among the parties in connection with this Agreement, the prevailing party in such action or suit shall be entitled to have and recover from the other party all reasonable costs and expenses of suit or action, including, without limitation, attorneys' fees and costs.

11.04     Waiver of Jury Trial. The parties further agree that to the fullest extent permitted by law, each party hereby irrevocably waives his or its right to trial by jury on all issues that are subject to the right to a jury. *The parties make this waiver of a trial by jury intentionally, knowingly, voluntarily and free from fraud, duress and coercion.* The parties recognize the benefits and disadvantages of a trial by jury and elect to waive their right to a jury and do so in consultation with counsel.

11.05     Assignability. This Agreement is assignable by the Employer, without the Executive's consent, in connection with any reorganization of ASH, provided that there is no material change in any of the terms and conditions of the Executive's employment and/or this Agreement.

The Executive may not assign, transfer, pledge or encumber the Executive's interest in this Agreement nor assign any of the rights or duties of the Executive under this Agreement without the prior written consent of the Employer.

11.06     Successors and Assigns. This Agreement shall be binding on and inure to the benefit of the successors and assigns of the Employer and the heirs, executors, personal legal representatives and permitted assigns of the Executive.

11.07     No Tax Advice. Executive acknowledges that the Employer and ASH have not provided him with any advice concerning any tax implications of any payments hereunder. Executive further acknowledges that he has the sole and exclusive responsibility for any tax liability in connection with any payments provided under Article 7 hereof. Should any federal, state or local taxes be determined to be owing on such payment received by Executive, Executive shall be solely and completely responsible for such taxes, penalties and interest; the Employer and ASH shall not be responsible for any such taxes, interest or penalties. In addition, all payments hereunder shall be subject to all applicable federal, state or local employment and tax withholdings and deductions.

11.08     Entire Agreement. This Agreement is the entire agreement between the Employer and the Executive pertaining to his employment with the Employer and supersedes all previous agreements. There are no warranties, representations or agreements between the parties in connection with the subject matter of this Agreement except as specifically set forth or referred to in this Agreement, the APA, or the Grayhawk Transaction.

11.09     Amendment to be in Writing. Any amendment or modification of this Agreement will be in writing and signed by the Parties or it will have no effect.

11.10     Survival of Provisions. Notwithstanding the termination of this Agreement for any reason whatsoever, the provisions of Articles 6.00, 8.00, 9.00, 10.00 and 11.02-11.04, inclusive, of this Agreement and any other provisions of this Agreement necessary to give efficacy thereto shall continue in full and force and effect following such termination.

11.11     <u>Executive's Acknowledgement</u>.  The Executive acknowledges that he: (a) has had sufficient time to review and consider this Agreement thoroughly; (b) has read and understands the terms of this Agreement and his obligations hereunder; (c) has had the opportunity to seek independent legal advice concerning the interpretation and effect of this Agreement prior to the execution and delivery of this Agreement, and (d) has voluntarily entered into this Agreement.

11.12     <u>Counterparts.</u>  This Agreement may be executed in counterparts, all of which together shall constitute one fully-executed agreement, and by signature to facsimile (fax) or electronic transmittal documents, and such signature shall be deemed to constitute an original signature for such party.

[Signature page to follow]

**IN WITNESS WHEREOF** the parties have caused this Agreement to be duly executed as of the Effective Date.

**EMPLOYER:**

ASH-Grayhawk, LLC

By: _____
Gregory Benson, CEO

I have authority to bind the Employer.

American Southern Homes Holdings LLC

By: _____
J. Marshall Coleman, Authorized Officer

As Guarantor of the obligations of the Employer

_____
David B. Erickson

November 15, 2019

IN WITNESS WHEREOF the parties have caused this Agreement to be duly executed as of the Effective Date.

EMPLOYER:

ASH-Grayhawk, LLC

By: _____
    Gregory Benson, CEO

I have authority to bind the Employer.

American Southern Homes Holdings LLC

By: *(signature)*
    Marshall Coleman, Authorized Officer

As Guarantor of the obligations of the Employer

_____
David B. Erickson

November 15, 2019