**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**Columbus Division**

**AMERICAN SOUTHERN HOMES**
**HOLDINGS, LLC and ASH-**
**GRAYHAWK, LLC,**

      **Plaintiffs,**

      **v.**                                             **Case No: 4:21-cv-00095-CDL**

**DAVID B. ERICKSON, ROSE ANNE**
**ERICKSON, GH LOT HOLDINGS,**
**INC., GH LOT HOLDINGS OF**
**ATLANTA CORPORATION F/K/A**
**GRAYHAWK HOMES OF ATLANTA,**
**INC., GH LOT HOLDINGS OF SOUTH**
**CAROLINA, INC., F/K/A GRAYHAWK**
**HOMES OF SOUTH CAROLINA, INC.,**
**TIGER CREEK DEVELOPMENT, INC.,**
**CUSSETA ROAD, LLC, SAGE**
**DEVELOPMENT, INC., ERICKSON**
**INVESTMENTS, INC., WINDSONG**
**BONACRE, LLC, GREY ROCK**
**DEVELOPMENT, LLC, and**
**CARROLLTON DEVELOPMENT,**
**LLC,**

      **Defendants.**


\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiffs American Southern Homes Holdings, LLC ("ASHH") and ASH-Grayhawk,

LLC ("ASH-GH" and, collectively with ASHH, "ASH") hereby allege as follows:

## I.   PRELIMINARY STATEMENT

1.     ASHH is in the business of acquiring, integrating, and operating homebuilding companies in the United States, implementing best practices in the homebuilding industry to provide consumers with high quality homes at a fair price.

2.     On November 15, 2019, ASH-GH acquired the assets of Grayhawk Homes, Inc. (the "Acquisition"), which was founded by David B. Erickson ("Erickson").  The parties entered into a number of contracts, representing and agreeing to their respective obligations to be bound by, comply with, and be liable under such agreements.

3.     One of such agreements required Erickson (both individually and through other defendants), to serve as a "land banker" for ASH-GH.  In particular, Erickson agreed to hold title to land (including land he already owned and land he might purchase in the future), develop such land into roughly 1,600 finished lots ready for home construction, and sell such lots to ASH-GH, whereupon ASH-GH would build homes on the lots.  This was a key component of the Acquisition and the purchase premium ASH paid to Erickson, insofar as it comports with ASH's "land light" business model and guaranteed ASH-GH a pipeline of developed lots for at least seven years.

4.     Erickson, acting both individually and through a number of related and affiliated entities that he owns and/or controls, has failed to comply with the terms of many, if not all, of these agreements, including his obligation to serve as a land bank for ASH-GH.

5.     Following the Acquisition in November 2019, Erickson became a member of the ASHH Board of Directors, and a unitholder in ASHH.  He also served as a consultant to ASH, advising on potential acquisitions and carrying out other tasks.

6.     On October 28, 2020, the ASHH Board appointed Erickson as its interim CEO, to serve for a transition period until ASHH could identify and retain a permanent CEO.  Erickson

became the interim CEO after he pushed for the removal of the incumbent CEO of ASHH, as well as the President of ASH-GH.  As interim CEO, he took over management of both entities.

7.     Just days later, Erickson announced his desire to serve as the permanent CEO of ASHH, and he began to negotiate for a generous compensation package.  After such negotiations failed to produce an agreement, ASHH informed Erickson that it would continue its search for a permanent CEO and that he would remain as interim CEO.

8.     On December 16, 2020, Erickson sent a letter to the Chairman of the Board of ASHH, stating as follows: "This letter is to acknowledge our joint understanding to discontinue my role as interim CEO of American Southern Homes Holdings, LLC effective February 28, 2021. I shall continue to serve as Interim CEO between now and February 28th, unless informed to discontinue sooner.  I am disappointed in the decision to end my role as CEO, but fully understand the thinking involved."

9.     Just four days later, on December 20, 2020, Erickson sent another letter in which he abruptly resigned as the interim CEO of ASHH, despite his earlier commitment to remain until February 28, 2021:  "Clearly the board of ASH[H] does not have confidence in my filling the role of CEO for ASH[H].  As such, I am resigning effective immediately as interim CEO of ASH[H]."

10.     In the December 20 letter, Erickson also resigned from the ASHH Board, stating as follows: "I am hereby resigning from the Board of Directors for ASH[H] effective immediately. Obviously, I remain a shareholding member of ASH[H].  **In the past year, I have developed ambitions to do more things in the home building and development business and feel that my responsibilities with ASH[H] are likely to constitute a conflict of interest[] with those goals and possibilities**." (emphasis added).

11.     On December 30, 2020, Erickson sent another letter in which he sought clarification of restrictions imposed by his agreements with ASH, stating as follows: "**I am intending to purchase one or more home building companies in the near term for my own investments. If that step should go well, I may consider doing additional purchases in the future.**" (emphasis added).

12.     Thus, Erickson declared his intention to compete directly with ASHH, after serving as a director and consultant for more than a year, and as interim CEO since October 28, 2020.  Of course, Erickson had extensive access to confidential information about ASHH's business and acquisition strategies in all of such roles.

13.     Erickson's abrupt resignation as the interim CEO of ASHH and as a member of its Board, as well as his declared intention to compete directly with ASHH in the market for homebuilder acquisitions, understandably raised concerns for ASHH, particularly in light of his access to confidential information before separating from ASHH.  ASHH has taken steps to address such concerns, prompting a dispute with Erickson that is subject to arbitration.

14.     Confirming the reasonableness of such concerns, ASH has learned that Erickson, individually and on behalf of other Defendants named in this lawsuit, has been acting in clear breach of various contractual restrictions and in violation of federal copyright law, as well as state and federal trademark and unfair competition law.

15.     First, Erickson has violated and is violating his confidentiality obligations as an ASH consultant, which are set forth in an Employment Agreement and Consulting Agreement.

16.     In particular, Erickson has misappropriated ASHH's confidential business information to pursue his own business ventures, using such information gathered during his time with ASHH as a basis to launch his own competing ventures.  For example, Erickson participated

in ASHH's negotiation of a deal to acquire Dorn Homes ("Dorn"), dissuaded ASHH from increasing its purchase price offer, and then attempted to acquire Dorn on his own account, before taking on a position as the interim CEO of ASHH.  He has also pursued the acquisition of another homebuilding company in Austin, TX by leveraging confidential information he obtained while associated with ASHH.  He has also tried (unsuccessfully) to solicit at least one ASH employee for employment using confidential information he obtained while associated with ASHH.

17.     Second, Erickson has ignored and is ignoring the reasonable non-compete restrictions in the Asset Purchase Agreement entered into at the time of the Acquisition, by building and selling homes within 100 miles of Atlanta, Georgia (and in some cases within 100 miles of Columbus) and also by operating competitive homebuilding operations from a Columbus, Georgia headquarters in the same office park as the ASH-GH headquarters.

18.     Third, Erickson and his wife Rose Anne Erickson (collectively, the "Ericksons"), as well as other Defendants, have failed and are failing to comply with the terms of a Land Purchase Agreement entered into at the time of the Acquisition, which requires the Ericksons and any entities they own or control to serve as a land bank and develop and sell lots that conform to certain standards, and, when they do not, to remediate the lots at their expense.  The Ericksons and the entities they own or control have declined to sell lots to ASH-GH, despite their contractual obligation to do so pursuant to a Land Purchase Agreement entered into by the parties.

19.     Fourth, Erickson has improperly used the "Grayhawk" and/or "Grayhawk Homes" trademark, trade name and logo, which he fully assigned to ASH-GH through the Asset Purchase Agreement and an accompanying Trademark Assignment Agreement, also violating state and federal trademark laws.  Erickson has improperly marketed homes using the Grayhawk and/or Grayhawk Homes trademark and trade name, specifically via entities named "Grayhawk Homes

5

of Atlanta" and "Grayhawk Homes of South Carolina." Erickson's unauthorized use of the Grayhawk trade name has caused confusion in the marketplace—including with consumers and suppliers who mistakenly believe that Erickson's "Grayhawk" branded ventures are affiliated with ASH-GH—resulting in damage to ASH-GH.

20.     Fifth, Erickson has improperly used copyrighted Grayhawk building plans that ASH-GH purchased as part of the Acquisition ("Grayhawk Building Plans"), in violation of the Asset Purchase Agreement and an accompanying Copyright Assignment Agreement, as well as federal copyright law.

21.     Through this Complaint, Plaintiffs seek an injunction prohibiting Erickson from misappropriating confidential information; a judgment for specific performance requiring Erickson and other Defendants to perform their obligations under the LPA; an injunction preventing Erickson from continuing to violate his non-compete obligations; a judgment for specific performance requiring Erickson's compliance with the Copyright Assignment Agreement and Trademark Assignment Agreement; an injunction prohibiting Erickson's ongoing infringement of ASH-GH's intellectual property; a monetary judgment for damages arising from Erickson's breach of various contracts, to the extent such damages can be quantified, and from his willful trademark and copyright infringement; as well as the recovery of ASH's reasonable attorneys' fees.

## II.     THE PARTIES

22.     American Southern Homes Holdings, LLC (or ASHH), is a Delaware limited liability company and the indirect parent of ASH-Grayhawk, LLC. As stated above, ASHH is in the business of acquiring, operating, and integrating homebuilders in the United States.

23.     ASH-Grayhawk, LLC (or ASH-GH) is a Virginia limited liability company with its principal place of business in Columbus, GA.  ASH-GH is in the business of building and selling single-family homes in Georgia and Alabama.

24.     GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.) is a Georgia corporation that is owned and controlled by Erickson.  GH Lot Holdings, Inc. was formerly known as "Grayhawk Homes, Inc." and is a member of ASHH.

25.     Grayhawk Homes of Atlanta, Inc. is a Georgia corporation that is owned and controlled by Erickson.  On or about January 19, 2021, Grayhawk Homes of Atlanta, Inc. changed its name to "GH Lot Holdings of Atlanta Corporation."  According to the Office of the Georgia Secretary of State website, Erickson is its Chief Executive Officer.

26.     Grayhawk Homes of South Carolina, Inc. is a South Carolina corporation that is owned and controlled by Erickson.  On or about February 3, 2021, Grayhawk Homes of South Carolina, Inc. filed articles of amendment with the South Carolina Secretary of State, changing its name to "GH Lot Holdings of South Carolina, Inc."

27.     The Ericksons own and control several other related and affiliated entities that own land in Alabama or Georgia, including but not limited to Tiger Creek Development, Inc. (upon information and belief, this entity is jointly owned by the Ericksons), Cusseta Road, LLC (upon information and belief, this entity is wholly owned by Rose Anne Erickson), Grey Rock Development, LLC (upon information and belief, Rose Anne Erickson is a majority owner and Erickson and other third parties are minority owners), Windsong Bonacre, LLC, Erickson Investments, Inc., Sage Development, Inc. (upon information and belief, Erickson is a majority owner and Rose Anne Erickson is a minority owner), and Carrollton Development, LLC.

### III.   JURISDICTION & VENUE

28.   This Court has original subject matter jurisdiction over Plaintiffs' copyright and trademark claims pursuant to 28 U.S.C. §§ 1331 and 1338.

29.   This Court has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367.  The remaining claims are so related to the federal claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

30.   This Court has personal jurisdiction over each of the Ericksons, as both are citizens and residents of the State of Georgia and this District.  In addition, the Ericksons each conduct and transact business in this District.  David Erickson's office is located at 2301 Airport Thruway in Columbus, Georgia, and Rose Anne Erickson's office is located at 110 B Enterprise Court in Columbus, Georgia.

31.   This Court has personal jurisdiction over Defendant GH Lot Holdings, Inc. because it is a Georgia corporation that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

32.   This Court has personal jurisdiction over Defendant GH Lot Holdings of Atlanta Corporation (f/k/a Grayhawk Homes of Atlanta, Inc.) because it is a Georgia corporation that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

33.   This Court has personal jurisdiction over Defendant GH Lot Holdings of South Carolina, Inc. (f/k/a Grayhawk Homes of South Carolina, Inc.) because it is a South Carolina corporation that does business in the State of Georgia and in this District and has an office at 2301 Airport Thruway in Columbus, Georgia.

34.     This Court has personal jurisdiction over Defendant Tiger Creek Development, Inc. because it is a Georgia corporation that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

35.     This Court has personal jurisdiction over Defendant Cusseta Road, LLC because it is a Georgia limited liability company that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

36.     This Court has personal jurisdiction over Defendant Sage Development, Inc. because it is a Georgia corporation that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

37.     This Court has personal jurisdiction over Defendant Erickson Investments, Inc. because it is a Georgia corporation that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

38.     This Court has personal jurisdiction over Defendant Windsong Bonacre, LLC because it is a Georgia limited liability company that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

39.     This Court has personal jurisdiction over Defendant Grey Rock Development, LLC because it is a Georgia limited liability company that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

40.     This Court has personal jurisdiction over Defendant Carrollton Development, LLC because it is a Georgia limited liability company that does business in the State of Georgia and in this District and has a principal place of business at 2301 Airport Thruway in Columbus, Georgia.

41.     Working from their offices in Columbus, Georgia, certain Defendants have caused, directly and/or indirectly through intermediaries, Georgia and South Carolina property listings and

other similar information to be made available on the internet, accessible and viewable by residents of the State of Georgia and this District.  Examples of these Georgia and South Carolina property listings are listed below.  The Georgia and South Carolina property listings and other information not only contain ASH-GH's copyrighted and trademarked material, but also are in violation of the several agreements the parties entered into as part of the Acquisition.

42.     As set forth below, certain Defendants compete with Plaintiffs in the State of Georgia and in this District.

43.     Venue is properly founded in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred and are occurring in this District, and Defendants are subject to personal jurisdiction in this District.

44.     Venue is properly founded in this Division pursuant to M.D. Ga. Local Civil Rule 3.4, because some or all Defendants reside in the Division and the actions giving rise to the claim arose in the Division.

45.     In addition, in the Asset Purchase Agreement ("APA") attached as **Ex. 1** to this Complaint, the parties "consent[ed] exclusively to the personal jurisdiction of any state or federal court sitting in the State of Georgia in any action or proceeding arising out of this Agreement." APA § 11.10(a).  The parties agreed that they "shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court."  *Id.* at § 11.10(c).   The Ericksons and GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.) are all parties to the APA.

46.     Further, the parties agreed in the Land Purchase Agreement ("LPA") attached as **Ex. 2** to this Complaint that "any judicial action shall be brought exclusively in the U.S. District Court in Columbus, Georgia regardless of the location of the affected Lots, and the Parties consent to submit to the personal jurisdiction of that court in any action or proceeding arising out of or

relating to this Agreement." LPA § 26. Defendants David Erickson, Rose Anne Erickson, GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.), Tiger Creek Development, Inc., Cusseta Road, LLC, Grey Rock Development, LLC, Windsong Bonacre, LLC, Erickson Investments, Inc., Sage Development, Inc., and Carrollton Development, LLC are all parties to the LPA, and the LPA imposes obligations on them.

## IV.   FACTUAL BACKGROUND

47.   On November 15, 2019, ASH-GH acquired the operating assets of Grayhawk Homes, Inc. from Erickson. In exchange, Erickson obtained an equity interest in ASHH (both in his own name and through GH Lot Holdings, Inc.) and agreed to receive deferred payments on an installment basis, subject to certain requirements. $3,600,000 of the deferred payments have not yet been paid to Erickson.

48.   After increasing his position in ASHH by acquiring and exercising warrants from other ASHH members, Erickson now holds 47,000 units in ASHH, and GH Lot Holdings, Inc. holds 40,000 units. At the time of acquisition, such units were valued at $100 per unit. Thus, Erickson and GH Lot Holdings, Inc. together acquired ASHH units valued at $8.7 million.

49.   The parties entered into several associated agreements at the time of the Acquisition, including:

- Asset Purchase Agreement ("APA," attached as **Ex. 1** and incorporated by reference);

- Land Purchase Agreement ("LPA," attached as **Ex. 2** and incorporated by reference);

- Trademark Assignment Agreement (attached as **Ex. 3** and incorporated by reference);

- Copyright Assignment Agreement (attached as **Ex. 4** and incorporated by reference);

- Consulting Agreement (attached as **Ex. 5** and incorporated by reference); and

- Employment Agreement (attached as **Ex. 6** and incorporated by reference).

50.     All of these agreements are governed by Georgia law.

51.     Since the Acquisition closed on November 15, 2019, Erickson has breached all of these agreements.

### A.     Relevant Terms of Agreements

#### 1.     Consulting Agreement – Confidentiality Obligations

52.     Erickson entered into a Consulting Agreement with a term that extends until on or about November 15, 2021, unless terminated earlier.  Ex. 5, Consulting Agreement § 2.

53.     Under the Consulting Agreement, Erickson was paid $48,000 per year in 12 monthly installments (for 16 hours of time per month), plus $250/hour for any additional time, $1,500 for travel days, and $1,000 per month for health insurance.  *Id.* § 3.

54.     Erickson acknowledged that, as a consultant, he would have access to ASH's "Confidential Information," which is defined as "non-public, proprietary and/or confidential information relating to the business and affairs of the Company and/or ASH…."  *Id.* § 7.  This includes "trade secrets, know how, research and development, databases, software, and other intellectual property; information concerning personnel, compensation, recruiting, and training; and information concerning the past, future, or current business of the Company, activities and operations of the Company and/or ASH, including customers, clients, suppliers, contractors, products and prices (the 'Confidential Information')."  *Id.*

55.     Erickson agreed "that such Confidential Information shall be subject to the terms and obligations described in Article 6.00 of the Employment Agreement, and that such terms and obligations shall survive the termination of this Agreement for a period of one year."  *Id.*

56.     In Article 6 of the Employment Agreement, Erickson similarly acknowledged that he "will receive or have access to certain non-public, proprietary, and/or confidential information,"

which includes "trade secrets, know how, research and development, databases, software, and other intellectual property [...] and operations of [ASH], including customers, clients, suppliers, contractors, products and prices."  Ex. 6, Employment Agreement § 6.01.

57.     Erickson also "recognize[d] and acknowledge[d] the competitive value and confidential and proprietary nature of the Confidential Information for which he will have access in the performance of his duties and responsibilities for the Employer and/or ASH…."  *Id.* § 6.02.

58.     Erickson further "recognize[d] and acknowledge[d]" the following:

> [T]he losses, costs and damages that could result to [ASH] if any Confidential Information is disclosed to any other Person and in connection therewith the **Executive agrees to keep the Confidential Information confidential, to use the Confidential Information only in connection with the carrying out of duties and responsibilities under this Agreement, not to use the Confidential Information after the termination of this Agreement for any reason**, and not to disclose any Confidential Information to any Person (other than employees and advisors of Employer and/or ASH who specifically need to know such Confidential Information and who have previously agreed, either as a condition of employment or in order to obtain the Confidential Information, to be bound by terms and conditions substantially similar to those of this Section), in any manner whatsoever, in whole or in part.

*Id.* (emphasis added).

59.     Erickson's Consulting Agreement may be terminated for cause for a number of reasons, including if he "misappropriat[es] any money, assets, or properties of the Company" for "personal gain or enrichment," engages in conduct that involves "fraud, moral turpitude, dishonesty, misconduct, embezzlement, theft, or similar matters that are detrimental" to ASH, "breach[es] [the Consulting Agreement] or his non-competition obligations set forth in the APA," or the LPA is terminated as a result of an uncured breach.  Ex. 5, Consulting Agreement § 4.

60.     On April 8, 2021, ASH terminated the Consulting Agreement for cause for the reasons set forth in this Complaint, including but not limited to misappropriation and use of assets of the Company for personal gain (e.g., confidential information, copyrighted plans, and other

intellectual property) and breach of the non-competition obligations set forth in the APA (e.g., by building and selling homes within 100 miles of Atlanta, GA or Columbus, GA, and by operating a competitive homebuilding operation headquartered in Columbus, GA).

### 2.     Asset Purchase Agreement

61.    Through the APA, Defendants GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.) and the Ericksons (among others) agreed to "sell, transfer, convey, and deliver to [ASH-GH] all tangible and intangible property and assets utilized or held for use in, related to, or arising from the Business, wherever located, and whether or not reflected in Seller's books and records."  Ex. 1, APA § 1.1.

62.    ASH-GH purchased "all of [the sellers'] right, title, and interest in, under, and to" several items, including real property, intellectual property, real property contracts, receivables, marketing materials, utilities, inventory, property reports, real property leases, personal property, sales contracts, permits, prepayments, customer information, employee records, phone numbers, claims and rights, claims, and the business as a going concern.  *Id.* § 1.1(a).

63.    "Business" is defined as the "business of residential lot acquisition, homebuilding and home sales in the Columbus, Georgia metropolitan area, inclusive of certain portions of Alabama."  *Id.*, Recital A.

64.    "Intellectual Property" is defined as follows:  "All intellectual property, including all of the following and similar intangible property and related proprietary rights, interests and protections, whether registered or unregistered and however arising: (i) patents, **copyrights**, trademarks, **service marks**, **trade names**, domain names, trade secrets, websites, extranets, software as a service, Software, (ii) **architectural, building, and engineering designs, drawings, specifications, and plans, including house plans for any existing or planned community**, (iii)

proprietary information or rights including any and all plans, and other project related information of prior and currently active real estate projects, and (iv) **goodwill associated therewith**."  Ex. 1, APA § 1.1(j) & § 12.1(v) (emphasis added).

65.    The Ericksons also agreed to certain enforceable restrictive covenants in connection with the sale of the business.  Specifically, Section 6.5(a) of the APA provides as follows:

> "Non-Solicitation; Non-Competition. **To further ensure that Buyer receives the anticipated benefits of acquiring the Business, each Seller agrees throughout the period that begins on the Closing Date and ends on the later to occur of (i) the third (3rd) anniversary of the Closing Date and (ii) the expiration of the Deferred Payments Period (the "Restricted Period")**, no Seller nor any Affiliate of a Seller (the "Restricted Parties") will employ or solicit for employment or otherwise attempt to employ any employee of (i) Buyer (so long as the Restricted Parties have actual knowledge that such persons are employees of Buyer) or (ii) any current employee of a Seller who is hired by Buyer or (iii) any person who is or becomes an employee of Buyer at any time during the Restricted Period (so long as the Restricted Parties have actual knowledge that such persons are employees of Buyer). The prohibitions set forth in this Section 6.5(a) shall (i) not prevent any Seller or its Affiliates from hiring any person who (a) is presented to it by a professional placement agency; (b) contacts a Seller or its Affiliates in response to general advertisements (including postings on LinkedIn or similar websites); (c) contacts a Seller or its Affiliates on his or her own initiative for the purpose of seeking employment in each case without direct or indirect solicitation or encouragement from such Seller or its Affiliates or (d) has been terminated by Buyer prior to commencement of employment discussions with such Seller or its Affiliates. **Each Seller, D. Erickson, and R. Erickson further agree that during the Restricted Period, none of Seller, D. Erickson, or R. Erickson shall participate in a competitive homebuilding operation or business within 100 miles of the geographic markets of each Seller as of the Closing Date, which shall include Columbus, Georgia; Atlanta, Georgia; Macon, Georgia; Dothan, Alabama; and Montgomery, Alabama**, unless Buyer has breached any material obligations after the Closing Date and such material breach remains uncured for a period of thirty (30) days after receipt of written notice by Buyer from a Seller. In the event of such uncured breach, or in the event Seller terminates the Land Purchase Agreement as a result of an uncured breach of the Land Purchase Agreement (as more fully set forth in Section 34 therein), Seller or D. Erickson and R. Erickson may thereafter compete against Buyer free of any limitations imposed by this Section 6.5(a)."

Ex. 1, APA § 6.5(a) (emphasis added).

### 3.      Trademark Assignment Agreement

66.     In the Trademark Assignment Agreement, Erickson, through Grayhawk Homes, Inc. (now GH Lot Holdings, Inc.), conveyed to ASH-GH "all worldwide right, title, and interest in, to, and under all Trademarks," including particularly the "Grayhawk" trade name and logo.  Ex. 3, Trademark Assignment Agreement § 1.

67.     "Trademarks" means "all of [Erickson's] right, title, and interest in and to Assignor's **trademarks, service marks, trade names**, trade secrets, **brand names, logos and corporate names**, slogans, **trade dress and other indicia of source of origin, whether or not registered**, including, but not limited to, all common law rights thereto and all goodwill associated therewith, and registrations and applications for registration thereof that constitute Purchased Intellectual Property, including, but not limited to, the trademark and/or service mark registrations and/or applications identified on Schedule 1."  *Id.*, Recital B (emphasis added).

### 4.      Copyright Assignment Agreement

68.     In the Copyright Assignment Agreement, Erickson, through Grayhawk Homes, Inc. (now GH Lot Holdings, Inc.), "s[old], assign[ed], convey[ed], and transfer[red]" all Copyrights to ASH-GH, and ASH-GH "purchase[d], acquire[d], accept[ed], and assume[d]" all such Copyrights.  Ex. 4, Copyright Assignment Agreement § 1.

69.     This assignment is universal and unequivocal and has the following scope:

**[A]ll worldwide right, title, and interest in, to, and under all Copyrights, whether registered or unregistered, and all elements thereof, including, without limitation, any and all derivative works of any of the foregoing and all privileges and goodwill associated with the Copyrights**, together with all now or hereafter existing rights of every kind and character whatsoever throughout the world pertaining to the Copyrights, and **all rights of Assignor to police, monitor, and enforce said Copyrights against any and all past and current infringement (including, without limitation, the right to sue for and collect damages caused by any such infringement)**, whether arising prior to or subsequent to the date hereof, the same to be held and enjoyed by Assignee, its successors and assigns

16

from and after the date of this Agreement as fully and entirely as the same would have been held and enjoyed by Assignor had this Agreement not been made.

*Id.* (emphasis added).

70.     Schedule 1 of the Copyright Assignment Agreement lists registered copyrights, including specific building plans.  ASH-GH has recorded the Copyright Assignment Agreement with the U.S. Copyright Office, against all registered copyrights listed on Schedule 1.

71.     The copyrighted Grayhawk Building Plans at issue, along with copyright filing and registration information, are detailed below.

### 5.     Land Purchase Agreement

72.     When ASH-GH acquired Grayhawk Homes, the parties also entered into the LPA. The LPA requires the Ericksons—and any entity "owned or controlled" by either of the Ericksons—to purchase and develop land, to serve as a land bank and develop building lots for sale to ASH-GH.  *See* Ex. 1, APA § 8.2(v); Seller Disclosure Letter § 8.2(v); Ex. 2, LPA Recitals. This was a central and critical aspect of the Acquisition, for which ASH paid a premium at closing.

73.     Specifically, the LPA states that "D. Erickson, R. Erickson, the Selling Entities, and any other entity owned or controlled by Erickson for purchasing and developing residential land, including but not limited to Tiger Creek Development, Inc., Cusseta Road, LLC, Grey Rock Development, LLC, Windsong Bonacre LLC, Erickson Investments, Inc., and Sage Development, Inc. (collectively, **Seller**), will, after Closing under the APA, provide residential building lots ("**Lots**") to Buyer."  Ex. 2, LPA Recitals.

74.     The LPA defines the "Selling Entities" as Grayhawk Homes, Inc. (now known as GH Lot Holdings, Inc.), Homestead Residential, Inc., and GH Services, Inc.  *Id.*  The LPA defines "Erickson" as collectively including Erickson, individually and on behalf of the Selling Entities, and Rose Anne Erickson, individually and on behalf of the Selling Entities.  *Id.*

75.     For convenience, Plaintiffs will refer to the individuals and entities bound by the LPA as the "LPA Sellers."   Among the Defendants, Erickson, Rose Anne Erickson, GH Lot Holdings, Inc., Tiger Creek Development, Inc., Cusseta Road, LLC, Grey Rock Development, LLC, Windsong Bonacre LLC, Erickson Investments, Inc., Sage Development, Inc., and Carrollton Development, LLC are LPA Sellers.   The Ericksons each signed the LPA individually and on behalf of all of the LPA Sellers.   *Id.*, Signature Page.

76.     The LPA Sellers are contractually obligated to develop and sell approximately 1,600 lots to ASH-GH.   Ex. 2, LPA § 2.   The lots are designated, based on their status at the time of the Acquisition, as "Finished" lots (Phase A Lots), lots that were being developed (Phase B Lots), and real property or lots that the LPA Sellers have purchased or have a right to purchase and that would be developed into finished lots (Phase C Lots).   *See id.*, Recitals & § 2.

### a.      The Takedown Schedule

77.     Erickson and the other LPA Sellers are "required to develop the Lots in accordance with [the LPA] and to satisfy the requirements of the Takedown Schedule."   *Id.* § 10.   The Takedown Schedule is set forth in Schedule 1 and extends for seven (7) years, or until all Phase C Lots have been developed by Erickson and the other LPA Sellers for purchase by ASH-GH.   *See id.*, Schedule 1.   The Takedown Schedule provides for a minimum of 180 closings per year, for a total of 1,263 lots.   *See id.*

78.     Erickson and the other LPA Sellers have covenanted and agreed "to pay for and be obligated for the costs of the development of the Lots and the Subdivisions."   *Id.* § 24.

79.     Section 6 of the LPA requires Erickson and the other LPA Sellers to deliver lots for sale to ASH-GH pursuant to the Takedown Schedule, and it states expressly that the Takedown Schedule sets forth only "the **minimum number of Lot closings, based on the availability of**

**Finished Lots**" required of ASH-GH on a quarterly basis (with ASH-GH to receive credit toward future takedowns if it is ahead of schedule):

> Seller is required to develop the Lots in accordance with this Agreement and to meet the requirement of the Takedown Schedule (defined below).  Starting with the calendar quarter ending on December 31, 2019, Buyer agrees to purchase from Seller the number of Lots set forth on the Lot takedown schedule attached as Schedule 1 to this Agreement (the "Takedown Schedule"). The number of Lots shown on the Takedown Schedule represents the **minimum number of Lot closings ("Lot Takedowns") that Buyer is required to complete, based on the availability of Finished Lots, during each calendar quarter**; provided, however, that to the extent Buyer purchases **more than the number of Lots shown on the Takedown Schedule** during any calendar quarter, the excess number of Lots shall be credited toward the Lot Takedowns required for the subsequent calendar quarter or quarters.  (emphasis added).

The number of Phase B Lots and Phase C Lots subject to the LPA exceed the number of Phase B Lots and Phase C Lots in the Takedown Schedule.  Thus, the LPA permits ASH-GH to take down more than the "minimum" number of lots set forth in the Takedown Schedule.

80.     Section 20 of the LPA provides, in turn, that "Buyer shall give Seller at least ten (10) business days' written notice of the intended Finished Lots to be purchased" by ASH-GH.

81.     Thus, the LPA expressly contemplates that ASH-GH will have the opportunity to purchase more than the minimum number of finished lots set forth in the Takedown Schedule, to the extent such lots are finished and available to purchase.  ASH-GH has done so throughout the term of the LPA.  As of the end of the third quarter of 2021, ASH-GH was ahead of the Takedown Schedule for Phase B Lots and had taken down the minimum number of Phase C Lots.

### b.     Phase C Lots and Takedowns

82.     Pursuant to the LPA, ASH-GH provided Erickson with a $2,500,000 deposit, which is to be credited and returned to ASH-GH pro-rata as it purchases Phase C Lots.  *Id.* § 4.

83.     The purchase price for each Phase C Lot is determined by the "current basis of each Phase C Lot shown on Exhibit C for each neighborhood" (i.e., the purchase price paid by Erickson for the land) with an increase of 0.5% per month for each month since January 1, 2020, plus reimbursement for property taxes paid between November 2019 and the lot takedown, plus reimbursement for the "actual costs" incurred to develop the Phase C Lot, and plus a $3,000 management fee.  The price resulting from such formula is described in the LPA as the "Phase C Purchase Price."  *Id.* § 11.

84.     If the Phase C Purchase Price for a lot "is equal to or less than twenty percent (20%) of the average appraised market sales price of a house in such Subdivision (the 'Estimated Market Value')," ASH-GH is to purchase the lot at the Phase C Purchase Price.  *Id.* §§ 11, 12.

85.     If the Phase C Purchase Price "exceeds 20% of the Estimated Market Value," Erickson (or the applicable LPA Seller) may "elect to sell such Phase C Lots to [ASH-GH] for a price equal to or less than 20% of the Estimated Market Value (the 'Reduced Phase C Purchase Price')," subject to a true-up to 20% of the actual sales price for the home if it exceeds the Estimated Market Value.  *Id.* § 13(a).

86.     Alternatively, if the Phase C Purchase Price "exceeds 20% of the Estimated Market Value," Erickson (or the applicable LPA Seller) may offer to sell such lots to ASH-GH through a written right of first offer ("ROFO"), and ASH-GH may elect to purchase at that price.  If ASH-GH declines, Erickson (or the applicable LPA Seller) "may accept any bona fide, arms-length offer . . . from any unrelated third party willing to purchase" such lots at the ROFO price.  *Id.* § 13(b)(i)-(ii).  The LPA defines these as the "Phase C ROFO Lots."  *Id.* § 13(b).

87.     The LPA Sellers may not sell Phase C ROFO Lots to an affiliated party or at a lower price or on better terms than are contained in the ROFO to ASH-GH.  *Id.* § 13(b)(ii).

88.     If Erickson (or the applicable LPA Seller) does not accept a bona fide, arms-length offer from an unrelated third party within 120 days, on terms no more favorable than offered to ASH-GH, Erickson (or the applicable LPA Seller) must again provide ASH-GH with a ROFO for the Phase C ROFO Lots at issue.  *Id.* § 13(b)(iii).

89.     If ASH-GH does not purchase any of the Phase C ROFO Lots, such lots do not count towards either party's obligations under the Takedown Schedule.  *Id.* § 13(b)(i).

90.     "[A]s to the Phase C lots," the LPA states that "during the first full year after the Closing under the APA, the Parties shall agree to the order in which specific Phase C lots will be developed." *Id.* § 10.

### c.     Future Lots and Takedowns

91.     Should Erickson or the other LPA Sellers "acquire or develop and offer for sale additional land or lots in the States of Georgia or Alabama that are not Phase A, B, or C Lots" (called "Future Lots"), they must first provide a written ROFO to ASH-GH for such lots ("Future ROFO Lots").  *Id.* § 14(a).  ASH-GH has a 45-day review period to elect to purchase Future ROFO Lots.  *Id.*

92.     If ASH-GH elects to purchase the Future ROFO Lots, there is an additional 45-day period to negotiate a purchase agreement and to conduct due diligence.  *Id.* § 14(a).

93.     If ASH-GH declines to purchase the Future ROFO Lots, Erickson (or the applicable LPA Seller) may accept a bona fide offer from an unrelated third party; however, Erickson (or the applicable LPA Seller) may not sell to the unrelated third party for less than the ROFO price offered to ASH-GH or on terms more favorable than the terms offered to ASH-GH.  *Id.* § 14.

94.     If Erickson (or the applicable LPA Seller) does not accept a bona fide, arms-length offer from an unrelated third party within 120 days, Erickson (or the applicable LPA Seller) must again initiate the written ROFO process for the Future Lots in a new ROFO to ASH-GH.  *Id.* § 14.

95.     The LPA Sellers must offer all Future Lots to ASH-GH "for the period through and including one (1) year after Erickson is no longer an employee, director, owner, officer, or member of [ASH-GH] or [ASHH]."  *Id.* § 14(e).  Erickson is presently a member of ASHH.

### d.     Lot and Subdivision Development Standards and Conditions

96.     Erickson and the other LPA Sellers are required to deliver the Lots subject to certain development standards.  *See generally id.* §§ 20-24.  Erickson and the other LPA Sellers agreed to "complete the development of the Lots and the Subdivisions in accordance with this Agreement at [their] sole cost and expense," subject to a variety of enumerated conditions.  *Id.* §§ 22, 23.

97.     The LPA provides that "prior to the closing for each Lot Takedown, Buyer shall have the right to investigate the condition of the Lots, and Seller shall have the obligation to provide access to all documents pertaining to the Lots if requested by Buyer."  *Id.* § 20.  Following such a walk-through, "Seller shall utilize commercially reasonable efforts to remediate such condition in a timely manner and if not promptly cured by Seller, Buyer may postpone the purchase of the Finished Lots or waive any such condition but which will not alleviate Seller from its obligations per [the LPA]."  *Id.*

98.     The LPA further provides that, at the closing for each lot, "there shall be no condition affecting any Finished Lot to be purchased that would prohibit Buyer from obtaining a building permit to construct a house on such Finished Lot or from obtaining a certificate of occupancy for the house once completed."  *Id.* § 21.

**B.     Misappropriation of ASHH's Confidential Business Information**

99.     Since the Acquisition in 2019, Erickson has been intimately and extensively involved in ASHH's business operations.  As a result, Erickson gained valuable and unique insight into ASHH's competitively sensitive and confidential business, strategy, and operations.

100.     As already explained, Erickson served as a member of the ASHH Board from November 15, 2019 until his resignation in December 2020.

101.     As a consultant to ASHH, Erickson focused on ASHH's acquisition strategy, as well as due diligence on potential acquisition targets.

102.     In late October 2020, after pressing for the removal of the prior CEO and jockeying for the interim CEO title, Erickson became ASHH's interim CEO.  Erickson was appointed to serve as interim CEO for six months, until ASHH hired a permanent CEO.

103.     Nevertheless, Erickson immediately began to lobby and pressure ASHH to appoint him as permanent CEO, and he demanded a generous compensation and benefits package.  In making these demands, Erickson used confidential information and details of other ASHH and ASH entities' executive compensation and benefit packages.

104.     As a member of the ASHH Board, as a consultant to ASH, and as the interim CEO of ASHH, Erickson had frequent and regular access to ASH's confidential and competitively sensitive business information.

105.     In his December 20, 2020 resignation letter, Erickson explained that he had decided to resign as ASHH's interim CEO and from the Board because he "developed ambitions to do more things in the home building and development business and feel[s] that [his] board responsibility with ASH are likely to constitute a conflict of interest[] with those goals and possibilities."

106.    In his December 30, 2020 letter, Erickson expounded on his intent to compete with ASHH, stating that he planned to "purchase one or more home building companies in the near term for my own investments.  If that step should go well, I may consider doing additional purchases in the future."

107.    In actuality, Erickson had already begun to compete with ASHH, using its confidential and proprietary assets to do so.

108.    For example, during negotiations with Dorn in fall 2020, ASHH considered increasing its purchase price offer.  Erickson dissuaded ASHH from increasing its offer and then attempted to purchase Dorn on his own, before becoming the interim CEO.  Ultimately, when ASHH closed the Dorn acquisition, it paid more than it otherwise would have paid if Erickson had not interfered and misused ASHH's confidential information for his own personal benefit.

109.    In another example, since resigning as ASHH's interim CEO and from the ASHH Board, Erickson has attempted to acquire a builder in Austin, Texas.  Erickson learned of and developed contacts with this builder during his tenure with ASHH, and he then used such confidential information in an attempt to acquire the builder.  For example, during his tenure as ASHH's interim CEO, Erickson traveled to Austin, Texas with other ASHH executives to meet in person with the owner of the business.

110.    As another example, in January 2021, Erickson contacted and solicited for employment an executive being recruited by ASHH and who ultimately joined ASHH.  Erickson was aware of ASHH's recruitment of that individual, having interviewed the new employee before he resigned and having attempted to sabotage ASHH's recruitment by offering him a "demotion" to work for ASHH, despite the fact that he was being considered for a senior executive position.

Erickson had no other relationship with this ASHH employee.  Nevertheless, Erickson solicited this individual to assist with his efforts to acquire the builder in Texas.

111.    Upon information and belief, Erickson also made offers of employment to other ASH personnel, including at its corporate headquarters and in the Columbus, Georgia area.

112.    Prior to joining ASHH, Erickson was in the business of developing raw land into lots and building homes in a local market.  After approximately a year working with ASHH, however, he decided to form a company that, like ASHH, is in the business of acquiring and operating homebuilding companies.  In short, Erickson copied the ASHH business model, using confidential information he learned during his tenure with ASHH to form a competing venture.

113.    To illustrate, Erickson prepared and distributed a draft business plan for the company he formed, which is named "Grand Oak Builders," to begin his strategy of acquiring and integrating homebuilders in competition with ASHH.  Erickson's draft business plan describes his planned formation of a "new home construction holding company," Newco Homes, in which Erickson is the CEO.  Erickson's plan states that he is "driving the vision for Newco Homes," and his business plan describes him as a "long term builder/developer" who sold "his company Grayhawk Homes, Inc. in 2019" and achieved "routinely enviable business performance."

114.    His business plan states that "Newco Homes is being formed to take advantage of the many opportunities to purchase, capitalize, and operate small to mid-size builders with the purpose of gaining market share, drive better organization and operate at higher degrees of efficiency...."  Newco Homes will "operate from the Columbus[,] Georgia offices of David Erickson [and] as additional scale is achieved, Newco will stand up its own office."

115.    Like ASHH, Grand Oak Builders is in the business of acquiring and integrating homebuilders, with which Erickson had little or no experience before he joined ASHH as a member

and served as a consultant, director, and interim CEO.  Accordingly, Grand Oak Builders is a vehicle for Erickson to compete with ASHH using its confidential and competitively sensitive business information, including in his business plan, learned during his stint with ASH.

116.    Indeed, the business plan plagiarizes from ASHH's Private Placement Memorandum for its acquisition of Dorn ("ASH Dorn PPM").  For example:

| ASH Dorn PPM | Grand Oak Business Plan |
| --- | --- |
| Focus on the Southern US area that is business-friendly, characterized by strong job growth, and as a result has a dynamic and growing housing market. | Focus on markets that are growth oriented, with consistent job growth and demographics favorable to continued new home construction. |
| Capitalize on the significant value delta between private, small scale builders and large builders (small single market builders routinely trade at significant discounts from large multi-market and publicly traded builders). | Capitalize on significant arbitrage between small and large builders that exist in the industry (because small single-market builders trade at material discounts to larger multi-market and public homebuilders). |

117.    Thus, Erickson has used ASHH's confidential information: (a) in an attempt to purchase Dorn on his own (after dissuading ASHH from increasing its offer); (b) in an attempt to acquire a Texas builder that Erickson learned about through his positions with ASHH; (c) to solicit an ASHH employee to assist with his potential acquisition of the builder in Texas; (d) to solicit other ASH employees; and (e) to compete with ASHH via Grand Oak Builders.

118.    These activities all breach Erickson's confidentiality obligations to ASH, set forth in various agreements. Ex. 5, Consulting Agreement § 7; Ex. 6, Employment Agreement §§ 6.01, 6.02.  Upon information and belief, these are not the only instances in which Erickson has misappropriated ASHH's confidential information for his own use and personal gain.

### C.     Non-Compete Violations

119.    In addition to the formation of Grand Oak Builders, until at least January 2021, Erickson operated a competitive homebuilding operation through an entity named "Grayhawk Homes of Atlanta Corporation," which is not affiliated with ASH-GH.

120.    According to property records and other publicly available information, "Grayhawk Homes of Atlanta" sold dozens of homes in two subdivisions—the Gates at Amberhill and the Reserve at Timberlands—in or near Dallas, Georgia during the period since November 15, 2019.

121.    According to public records, the sale of these homes appears to have generated revenue of at least $10 million.

122.    All of these homes and lots are within 100 miles of Atlanta, Georgia, and some are within 100 miles of Columbus, Georgia.

123.    Erickson's continued operation of "Grayhawk Homes of Atlanta" to build and sell homes in or around Dallas, GA, plus Erickson's operation of Grand Oak Builders and other homebuilding operations from his headquarters in Columbus, Georgia, violate the restrictive covenant in Section 6.5 of the APA, which provides that "none of Seller, D. Erickson, or R. Erickson shall participate in a competitive homebuilding operation or business within 100 miles of the geographic markets of each Seller as of the Closing Date, which shall include Columbus, Georgia; Atlanta, Georgia; Macon, Georgia; Dothan, Alabama; and Montgomery, Alabama."  Ex. 1, APA § 6.5.

### D.     Unauthorized Use of the Grayhawk Trademark, Trade Name and Trade Dress

124.    Since the Acquisition, Erickson, individually and on behalf of other Defendants, has continued to operate and conduct business using the Grayhawk trademark and trade name, including as "Grayhawk Homes of Atlanta" and "Grayhawk Homes of South Carolina."

125.    As explained above, ASH-GH acquired extensive intellectual property rights on November 15, 2019.  *Id.* § 1.1(j).  Such intellectual property includes "copyrights, trademarks, service marks, trade names [...] and goodwill associated therewith."  *Id.* § 12.1(v).

126.    The Trademark Assignment Agreement explicitly conveyed to ASH-GH "all worldwide right, title, and interest in, to, and under all Trademarks, including, without limitation, any and all common law rights thereto and the goodwill of the Business...."  Ex. 3, Trademark Assignment Agreement § 1.  "Trademarks" includes "trademarks, service marks, trade names[,] brand names, logos and corporate names, slogans[,] whether or not registered..."  *Id.*, Recital B.

127.    Nevertheless, the Grayhawk trademark, trade name and logo appeared on materials provided to the public, brokers, realtors, and others related to the sale of homes constructed by Grayhawk Homes of Atlanta and Grayhawk Homes of South Carolina.  In most instances, Erickson either left the "Grayhawk Homes" trademark, trade name and logo as is or used a modified version that simply appended "of Atlanta" or "of South Carolina" after "Grayhawk Homes."

128.    Erickson's use of the Grayhawk trademark, trade names and logo has caused confusion and mistake by potential home buyers and the general public.  For example, on the "Grayhawk Homes" Yelp and Build Zoom webpages, an individual posted two January 11, 2020 one-star comments about "issues with this company [i.e., Grayhawk Homes] after buying one of their spec homes in Bluffton, SC."  *See* https://www.yelp.com/biz/grayhawk-homes-columbus (last visited March 12, 2021); https://www.buildzoom.com/contractor/grayhawk-homes-inc-beallwood (last visited March 12, 2021) (containing identical review).  ASH-GH has not built or sold any homes in South Carolina.  As evidenced by the review, this individual confused Erickson's "Grayhawk Homes of South Carolina" entity with ASH's "Grayhawk Homes."



129.   As another example, on June 22, 2021, the corporate office of ASHH received a voicemail message from a representative at Builders Insurance Group "calling about a new lawsuit that's been filed against Grayhawk Homes of South Carolina" and requesting to speak with "your legal department or whoever the contact is that handles your construction defect lawsuit from the general liability carrier one of them for Grayhawk Homes."  Neither ASHH nor ASH-GH has sold or built homes in South Carolina; nor do they operate or refer to themselves as Grayhawk Homes of South Carolina.   As evidenced by this voicemail, the representative confused Erickson's "Grayhawk Homes of South Carolina" entity with ASH-GH.

130.   Also in June 2021, a roof truss supplier dropped ASH-GH as a customer because it mistakenly believed that ASH-GH used a different supplier for communities in the Atlanta area. The supplier confused Erickson's "Grayhawk Homes of Atlanta," which builds homes in and

around Dallas, GA, with the "Grayhawk Homes" business operated by ASH-GH. Thus, ASH-GH suffered both reputational and monetary harm as a result of confusion arising from Erickson's unauthorized use of the "Grayhawk Homes" trade name.

### E.    Unauthorized Use of Copyrighted Building Plans

131.    In addition, Erickson, individually and on behalf of other Defendants, is developing, building, and selling homes using copyrighted plans owned by ASH-GH, in both Georgia and South Carolina.

#### 1.    Georgia Copyright Violations

##### a.    Sycamore Plan

132.    Erickson used the "Sycamore" plan on at least one lot: 827 Pine Way, Dallas, Georgia. The Sycamore plan is registered with the U.S. Copyright Office and is specifically listed on Schedule 1 of the Copyright Assignment Agreement. Attached hereto as **Ex. 7** are the "Sycamore" copyrighted plans, "ATL-Sycamore" plans ASH-GH obtained through the Acquisition, documents demonstrating Erickson's infringement, and property records.

133.    **Figure 1** below is a screenshot of the Re/Max listing (MLS #8912570) for the sale of the property at 827 Pine Way, Dallas Georgia. The listing description states: "Welcome to the



Sycamore!"  The only images used in the MLS listing are the copyrighted Grayhawk Building

Plans; Erickson (and his agents) have no right to use these copyrighted materials.

    134.    **Figure 2a** below is a partial screenshot of the Sycamore plan copyright, which has

been filed and registered with the U.S. Copyright Office, Registration No. VAu 1-371-683, August

21, 2019.



135. **Figure 2b** below is a zoomed-in and rotated screenshot from Figure 2a that shows the "Grayhawk Homes, Inc." logo and copyright notice, which states as follows: "[A]ll drawings and material appearing herein constitute the original and unpublished work of Grayhawk Homes and the same or any part thereof may not be duplicated, distributed, disclosed, or used in any manner without the written consent of Grayhawk Homes. Penalties shall apply when user duplicates Grayhawk Homes work, without Grayhawk Homes' written consent."



136. **Figure 2c** below is a partial screenshot of the "ATL-Sycamore" plan, which is a substantially similar and derivative work to the "Sycamore" plan in Figure 2a. Further, Figure 2c comprises part of the Copyrights ASH-GH obtained as part of the Acquisition under the APA and Copyright Agreement.



137.   **Figure 3a** below is a screenshot from the same MLS listing shown in Figure 1 that

is identical or nearly identical to Figure 2a and also Figure 2c.



138.   **Figure 3b** below is a zoomed-in and rotated screenshot from the same listing shown in Figure 1 and Figure 3a that more clearly shows Erickson's use of the copyrighted Sycamore plan, on which is added "of Atlanta, Inc." below "Grayhawk." The image contains the same copyright notice as in the registered copyrighted plans shown in Figure 2b.



     **b.**  **Elmwood Plan**

139.   Erickson used the "Elmwood" plan on at least three lots including the following: 81 Cedar Ridge Way, Dallas, Georgia; 31 White Spruce Trail, Dallas Georgia; and 136 Grand Oak Trail, Dallas, Georgia.  The Elmwood plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-515, August 21, 2019.

     **c.**  **Longleaf Plan**

140.   Erickson used the "Longleaf" plan on at least four lots including the following: 853 Pine Way, Dallas, Georgia; 794 Pine Way, Dallas, Georgia; 596 Pine Way, Dallas, Georgia; and 153 Amberhill Court, Dallas, GA.  The Longleaf plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-701, August 21, 2019.

     **d.**  **Marshall Plan**

141.   The "Marshall" plan is among the copyrights assigned to ASH-GH, insofar as it was owned by Grayhawk Homes, Inc. prior to November 15, 2019.  Nevertheless, on or about

December 10, 2020 and while still serving as ASHH's interim CEO, Erickson improperly filed for registration with the U.S. Copyright Office a "BP-Marshall" plan that lists "Grayhawk Homes, Inc." as the copyright claimant and himself as holding the rights and permissions (Registration No. VAu001384084).

### e.      Poplar Plan

142.     Erickson used the "Poplar" plan on at least two lots: 15 White Spruce Trail, Dallas, Georgia; and 377 Amberhill Drive, Dallas, GA.  The Poplar plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-720, August 21, 2019.

### f.      Coventry Plan

143.     Erickson used the "Coventry" plan on at least two lots: 822 Pine Way, Dallas, Georgia; and 876 Pine Way, Dallas, Georgia.  The Coventry plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-635, August 21, 2019.

### g.      Birch Plan

144.     Erickson used the "Birch" plan on at least five lots: 299 Pine Way, Dallas, GA; 544 Pine Way, Dallas, Georgia; 848 Pine Way, Dallas, Georgia; 918 Pine Way, Dallas, Georgia; and 148 Amberhill Court, Dallas, Georgia.  The Birch plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-311, August 21, 2019.

### h.      Alder Plan

145.     Erickson used the "Alder" plan on at least two lots: 99 Grand Oak Trail, Dallas, Georgia; and 77 White Spruce Trail, Dallas, Georgia.  The Alder plan is registered with the U.S.

Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-080, August 21, 2019.

### i.     Jasmine Plan (Atlanta)

146.    Erickson used the "Jasmine" plan on at least one lot: 229 Pine Way, Dallas, Georgia.  The Jasmine plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-738, August 21, 2019.

### j.     River Oak Plan

147.    Erickson used the "River Oak" plan on at least one lot: 61 Grand Oak Court, Dallas, Georgia.  The River Oak plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-718, August 21, 2019.

148.    Figures 1, 3a, and 3b are representative of the Georgia listings.  For every address listed herein, Erickson duplicated, disclosed, and used ASH-GH's copyrighted plans, ASH-GH's derivative plans, or created derivative plans without ASH-GH's consent.

### k.     Aspen Plan

149.    Erickson used the "Aspen" plan on at least one lot: 61 Grand Oak Court, Dallas, Georgia.  The Aspen plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-303, August 21, 2019.

### l.     Magnolia Plan

150.    Erickson used the "Magnolia" plan on at least one lot: 257 Pine Way, Dallas, Georgia.  The Magnolia plan is filed with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement.  If necessary, ASH intends to amend this Complaint upon issuance of the registration.

### m.     Cardinal Plan

151.     Erickson used the "Cardinal" plan on at least one lot: 149 Grand Oak Trail, Dallas, Georgia.  The Cardinal plan is filed with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement. If necessary, ASH intends to amend this Complaint upon issuance of the registration.

### n.      Coventry Plan

152.     Erickson used the "Coventry" plan on at least three lots: 795 Pine Way, Dallas, Georgia; 255 Maple View Court, Dallas, Georgia; 323 Maple View Court, Dallas, GA.   The Coventry plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-635, August 21, 2019.

### o.      Hawthorne Plan

153.     Erickson used the "Coventry" plan on at least one lot: 822 Pine Way, Dallas, Georgia.  The Coventry plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-635, August 21, 2019.

### p.      Laurel Plan

154.     Erickson used the "Laurel" plan on at least one lot: 63 Pine Bluff Drive, Dallas, Georgia.  The Laurel plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-752, August 21, 2019.

### q.      Holley Brooke Plan

155.     Erickson used the "Holley Brooke" plan on at least one lot: 73 White Spruce Trail, Dallas, Georgia.  The Holley Brooke plan is filed with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement. If necessary, ASH intends to amend this Complaint upon issuance of the registration.

### 2.      South Carolina

### a.    Willow Plan

156.    Erickson used the "Willow" plan on at least one lot: 118 Waters Edge, Moncks Corner, South Carolina.  The Willow plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-700, August 21, 2019.  Attached hereto as **Ex. 8** are the "Willow" copyrighted plans, "SC-Willow" plans ASH-GH obtained through the Acquisition, documents demonstrating Erickson's infringement, and property records.

157.    **Figure 4** below is a screenshot of the Agent Owned listing (MLS #20028673) for the property at 118 Waters Edge Lane, Moncks Corner, South Carolina.  Several of the images used in the listing are the copyrighted Grayhawk Building Plans; Erickson (and his agents) have no right to use these copyrighted materials.  The listing begins: "Two Story "Willow" floor plan now under construction."



158.    **Figure 5a** below is a partial screenshot of the Willow plan, the registered copyright noted above.



159. **Figure 5b** below is a zoomed-in and rotated screenshot from Figure 5a that shows the "Grayhawk Homes, Inc." logo and states as follows: "[A]ll drawings and material appearing herein constitute the original and unpublished work of Grayhawk Homes and the same or any part thereof may not be duplicated, distributed, disclosed, or used in any manner without the written consent of Grayhawk Homes.  Penalties shall apply when user duplicates Grayhawk Homes work, without Grayhawk Homes' written consent."



160.   **Figure 5c** below is a partial screenshot of the "SC-Willow" plan, which is a substantially similar and derivative work to the "Willow" plan in Figure 5a.  Further, Figure 5c comprises part of the Copyrights ASH-GH obtained as part of the Acquisition under the APA and Copyright Assignment Agreement.



161.   **Figure 6a** below is a screenshot from the same MLS listing shown in Figure 4.



162.   **Figure 6b** below is a zoomed-in screenshot of two images from the same listing shown in Figure 4 and Figure 6a, which more clearly shows Erickson's manipulation and use of the copyrighted Willow plan by adding "of South Carolina, Inc." below "Grayhawk."  The image also contains the same copyright notice as in the filed and registered copyrighted plans, as shown in Figure 5b, and states as follows:  "Copyright Grayhawk Homes Inc. not to be reproduced without permission of Grayhawk Homes Inc."



### b.    Cardinal Plan

163.    Erickson used the "Cardinal" plan on at least one lot: 2243 Arthur Gaillard Lane, Charleston, South Carolina.  The Cardinal plan is filed with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement. If necessary, ASH intends to amend this Complaint upon issuance of the registration.

### c.    Carolina Plan

164.    Erickson used the "Carolina" plan on at least one lot: 2164 Military Way, Charleston, South Carolina.  The Carolina plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-033-819, May 11, 2010; Registration No. VAu 1-027-014, May 5, 2010.

### d.    Jasmine Plan (South Carolina)

165.    Erickson used the "Jasmine" plan on at least one lot: 119 Waters Edge Lane, Moncks Corner, South Carolina.  The Jasmine plan is registered with the U.S. Copyright Office and listed on Schedule 1 of the Copyright Assignment Agreement, Registration No. VAu 1-371-738, August 21, 2019.

### e.    Folly Plan

166.    Erickson used the "Folly" plan on at least two lots: 112 Waters Edge, Moncks Corner, South Carolina; and 2160 Military Way, Charleston, South Carolina.  The "Folly" plan is among the copyrights assigned to ASH-GH or is a derivative work.

### f.    Cooper Plan

167.    Erickson used the "Cooper" plan on at least one lot: 116 Waters Edge, Moncks Corner, South Carolina.  The "Cooper" plan is among the copyrights assigned to ASH-GH or is a derivative work.

g.      **Crane Plan**

168.    Erickson used the "Crane" plan on at least one lot: 121 Waters Edge, Moncks Corner, South Carolina.  The "Crane" plan is among the copyrights assigned to ASH-GH or is a derivative work.

h.      **Cape Plan**

169.    Erickson used the "Cape" plan on at least one lot: 2201 Arthur Gaillard Lane, Charleston, South Carolina.  The "Cape" plan is among the copyrights assigned to ASH-GH or is a derivative work.

i.      **Sullivan Plan**

170.    Erickson used the "Sullivan" plan on at least one lot: 2203 Arthur Gaillard Lane, Charleston, South Carolina.  The "Sullivan" plan is among the copyrights assigned to ASH-GH or is a derivative work.

171.    Figures 4, 6a, and 6b are representative of the South Carolina listings.  For every address listed herein, Erickson duplicated, disclosed, and used ASH-GH's copyrighted plans, or created derivative plans without ASH-GH's consent.

F.      **Erickson And The Other LPA Sellers Have Not Complied With The LPA**

1.      **Phase C Lot Development Order**

172.    As explained above, the LPA required the parties, within one year of the closing of the Acquisition, to "agree on the order to which specific Phase C lots will be developed."  *Id.* § 2.

173.    Erickson was the interim CEO of ASHH when the one-year deadline passed on November 15, 2020.  ASH has since offered multiple proposals to facilitate an agreement, but Erickson did not provide a substantive response to such proposals.

174.    Specifically, Erickson raised the issue of Phase C Lot development order in a March 4, 2021 email, and ASH responded the next day, stating as follows:

Thanks for raising this issue. ASH was poised to initiate discussions under Section 10 of the LPA before [former ASHH CEO Greg Benson and former ASH-GH President Ken Thirtyacre] were removed in October [2020], and we appreciate the opportunity to now revisit the sequence for Phase C lot development and takedowns by ASH. Per the LPA takedown schedule, ASH is to begin Phase C lot takedowns with a group of 15 lots by September 2021, plus another 15 lots by December 2021. While the LPA does not otherwise require ASH to make advance commitments (or to agree in advance on purchase prices), we agree that it makes sense to address the delivery schedule for Phase C lots.

To move this forward, it would be helpful if your team could provide an updated list of the subdivisions and Phase C lots with current statuses and estimated delivery dates. With that information, we will be in a better position to discuss the order of preference for takedowns, and also for developing additional Phase C lots in the future as we work through the rest of the takedown schedule. . . . To resolve any confusion as to direction or commitments from ASH, any such decision and communication thereof, will originate with [ASH's General Counsel].

175.     On March 6, 2021, Erickson sent a letter with "a chart of the various projects moving through the system to support ASH's business in the Columbus market area," including when he expected to deliver Phase C Lots that had not yet been released to ASH-GH.  In the chart, Erickson stated that he was ready to deliver a total of an additional 157 Phase C Lots in "late spring 2021" or "April 2021," if the parties could enter into an agreement.

176.     On March 18, 2021 ASH-GH replied to Erickson's March 6 letter and used the chart he prepared as a basis to propose a development order in an exhibit.  ASH-GH proposed a development order corresponding with the status of development described by Erickson, requesting that Erickson first complete the 157 Phase C Lots that he was already poised to deliver in Spring 2021 before turning to lots he expected to deliver later in the year or in later years.

177.     Erickson did not provide a substantive response to this proposal.

178.     On June 21, 2021, ASH provided Erickson with notice of default under Section 10 of the LPA for failing to agree to an order of development, stating as follows:

[W]ith respect to the alleged default under the LPA, Section 10 creates a two-way obligation requiring the parties to "agree on the order in which specific Phase C lots will be developed."  Mr. Erickson was the interim CEO of ASHH when the

one-year deadline passed, and the Company has since offered multiple proposals to facilitate an agreement.  Please consider this letter to constitute a formal notice of default by the Seller (as that term is defined in the LPA) as a result of the failure to agree on the order in which specific Phase C lots will be developed. Pursuant to Section 35 of the LPA, the Company requests that Seller cure this default within 15 days. The parties each having given a notice of default on this issue, we respectfully suggest that adopting the schedule already deemed acceptable in principle during our recent discussions would be a reasonable and efficient way to cure. Please let us know your views.

179.    Erickson did not respond to ASH's invitation to cure the breach by "adopting the schedule already deemed acceptable in principle during our recent discussions."

180.    Erickson did not cure within the 15-day period.  On July 12, 2021, ASH notified Erickson that he was in default and that it would pursue its remedies under Section 35 of the LPA.

### 2.    Lot Takedowns

181.    As explained above, Erickson and the other LPA Sellers are "required to develop the Lots in accordance with [the LPA] and to satisfy the requirements of the Takedown Schedule." Ex. 2, LPA § 10 & Schedule 1.  Section 6 of the LPA requires Erickson and the other LPA Sellers to deliver lots for sale to ASH-GH pursuant to the Takedown Schedule, and it states expressly that the Takedown Schedule sets forth "the minimum number of Lot closings" required of ASH-GH on a quarterly basis (with ASH-GH to receive credit toward future takedowns if it is ahead of schedule). *Id.* § 6.  As stated above, the number of lots subject to the LPA exceeds the "minimum" number of lot closings required by the Takedown Schedule.

182.    Thus, the LPA expressly contemplates that ASH-GH will have the opportunity to purchase more than the minimum number of finished lots set forth in the Takedown Schedule, to the extent such lots are finished and available to purchase.  ASH-GH has done so throughout the term of the LPA, putting it ahead of the Takedown Schedule for Phase B Lots.

183.    Erickson periodically provided to ASH-GH a list of lots that were released for purchase by ASH-GH, after they had been fully developed, platted, and assigned addresses.  From

the outset of the relationship between ASH-GH and Erickson, ASH-GH has made such lots available to its sales agents (who operate under the auspices of Rose Anne Erickson Realty, an agency owned and controlled by Rose Anne Erickson) to offer to prospective homebuyers. When a customer enters into a "contract to purchase a home on such a lot (i.e., a "pre-sale" contract), ASH-GH schedules a takedown and purchases the lot from Erickson or another LPA Seller before it begins construction.

184.    At the time of filing, Erickson and the other LPA Sellers had finished at least 138 Phase B Lots and 27 Phase C lots, all of which have already been released for purchase to ASH-GH.  Upon information and belief, an additional 200-250 Phase C lots are in development and close to being completed.  Pursuant to the LPA and confirmed by historical practice, ASH-GH should be able to take down any lots released for purchase by Erickson or the other LPA Sellers, regardless of whether it has already reached the minimum number of quarterly takedowns set forth in the Takedown Schedule.

185.    In breach of the LPA, however, Erickson and the other LPA Sellers have blocked ASH-GH from taking down such lots as a result of disputes between the parties.

### a.    Third Quarter 2021

186.    On June 17, 2021, ASH-GH submitted a lot purchase request for certain Phase B Lots and Phase C Lots already released for purchase.  The Takedown Schedule provides for a minimum of 15 Phase C Lot takedowns and 30 Phase B Lot takedowns in the third quarter of 2021. ASH-GH's takedown request included 11 Phase C Lots and 29 Phase B Lots.

187.    Defendants GH Lot Holdings, Inc., Tiger Creek Development, Inc., Cusseta Road, LLC, and Sage Development, Inc. own the lots requested by ASH-GH for purchase.  All of such entities are owned and controlled by the Ericksons.  Upon information and belief, Tiger Creek

Development, Inc. is jointly owned by Erickson (20%) and Rose Anne Erickson (80%), Cussetta Road LLC is wholly owned by Rose Anne Erickson, and Sage Development, Inc. is jointly owned by Erickson (95%) and Rose Anne Erickson (5%).   As the owners of these entities, the Ericksons control their decisions to refuse to sell lots to ASH-GH.

188.    On June 23, 2021, the LPA Sellers refused to deliver any of the requested lots to ASH-GH, despite the obligations imposed by the LPA.

189.    On June 24, 2021, ASH sent Erickson and the LPA Sellers a notice of default under the LPA and requested that they cure the default within 15 days under Section 35 of the LPA.

190.    Erickson and the other LPA Sellers did not cure the default within 15 days.  On July 12, 2021, ASH gave notice that the LPA Sellers were in default and that it would pursue its remedies under Section 35 of the LPA.

191.    On August 6, 2021, the LPA Sellers purported to terminate the LPA, pursuant to Section 34.  Such termination was ineffective, including because (1) Section 34 does not permit the LPA Sellers to terminate, except in the event that ASH-GH fails to take down the minimum number of lots required by the Takedown Schedule in a given quarter; (2) ASH-GH did not breach the LPA; and (3) any alleged breach was cured prior to the purported termination.

192.    The LPA Sellers ultimately agreed to sell the 11 Phase C lots to ASH-GH on September 30, 2021, the final day of the third quarter.  The LPA Sellers did not, however, permit ASH-GH to take down the 29 Phase B Lots identified in its June 17, 2021 takedown request.

### b.    Fourth Quarter 2021

193.    As of the fourth quarter of 2021, ASH-GH had met the "minimum" requirements of the Takedown Schedule for Phase C Lots, and it was 109 Phase B Lots ahead of the Takedown Schedule as a result of more Phase B Lot takedowns than the "minimum" in prior quarters.

194.    On December 8, 2021, ASH-GH submitted to the LPA Sellers a Lot Takedown Request with a closing to occur by the end of the fourth quarter.

195.    The LPA Takedown Schedule permits ASH-GH to purchase a "minimum" of 30 Phase B Lots and 15 Phase C Lots in the fourth quarter of 2021.  ASH-GH sought to take down 30 Phase B Lots and 15 Phase C Lots, all of which had already been released for purchase.  ASH-GH has surveyed the 45 lots and is ready, willing, and able to take them all down.

196.    Defendants GH Lot Holdings, Inc., Tiger Creek Development, Inc., Cusseta Road, LLC, and Sage Development, Inc. own the lots requested by ASH-GH for purchase.  All of such entities are owned and controlled by the Ericksons.  Upon information and belief, Tiger Creek Development, Inc. is jointly owned by Erickson (20%) and Rose Anne Erickson (80%), Cussetta Road LLC is wholly owned by Rose Anne Erickson, and Sage Development, Inc. is jointly owned by Erickson (95%) and Rose Anne Erickson (5%).  As the owners of these entities, the Ericksons control their decisions to refuse to sell lots to ASH-GH.

197.    The LPA Sellers refused to sell the lots to ASH-GH, stating in a December 17, 2021 letter that "Mr. Erickson will not deliver any further lots to ASH-Grayhawk," because the LPA "is terminated and Mr. Erickson's obligations thereunder are extinguished."

198.    On December 30, 2021 (the final business day of the fourth quarter), ASH provided the LPA Sellers with written notice of default and asked them to cure within 15 days.

199.    The LPA Sellers did not cure the default and have not offered to sell any lots to ASH-GH to meet their fourth quarter obligations under the Takedown Schedule in the LPA.

### c.    Future ROFO Lots

200.    As stated above, in the event that the Ericksons or any entity they own or control "acquire or develop and offer for sale additional land or lots in the States of Georgia or Alabama

that are not Phase A, B, or C Lots" (i.e., Future Lots), they must first provide a written ROFO to ASH-GH.

201.    Since November 15, 2019, Erickson (through entities that he owns or controls) has developed and offered for sale certain land and/or lots in Georgia without first providing a ROFO to ASH-GH, in breach of the LPA.

202.    Such land includes certain lots in Dallas, Georgia that were sold to third parties without providing a ROFO to ASH-GH.

**COUNT ONE**
**BREACH OF CONFIDENTIALITY OBLIGATIONS –**
**EMPLOYMENT AGREEMENT, AND CONSULTING AGREEMENT**
**(ASHH and ASH-GH against David Erickson)**

203.    ASH incorporates and repeats the allegations of Paragraphs 1-202 herein.

204.    The Consulting Agreement is a valid, binding, and enforceable contract between ASH and Erickson.

205.    Erickson is bound by the confidentiality provisions of the Consulting Agreement, whereby he acknowledged that "he will receive or have access to certain non-public, proprietary, and/or confidential information relating to the business and affairs of [ASH], including trade secrets, know how, research and development, databases…."  Ex. 5, Consulting Agreement § 7.

206.    Erickson "agree[d] and acknowledge[d] that such 'Confidential Information' shall be subject to the terms and obligations described in [Employment Agreement §§ 6.00, *et seq.*]."

207.    The Employment Agreement is a valid, binding, and enforceable contract between ASH and Erickson.

208.    The Employment Agreement requires Erickson to protect all "Confidential Information" of ASH and use such information "only in connection with the carrying out of duties and responsibilities under the [Employment Agreement]."  Ex. 6, Employment Agreement § 6.02.

209.    Erickson agreed that a "breach of the covenants contained in [§ 6.02] would result in irreparable harm to [ASH] and that monetary damages alone would be an inadequate remedy." *Id.* § 6.05.

210.    Erickson has used and continues to use ASH's confidential information for his own purposes, and not in connection with any legitimate duty or responsibility to ASH, including when he (a) attempted to purchase Dorn Homes after dissuading ASHH from increasing its offer price (with knowledge of ASHH's offer and negotiations); (b) attempted to purchase a Texas-based homebuilder using ASHH contacts and information obtained in his various positions at ASHH; (c) solicited an ASHH employee after interviewing that same employee during his tenure with ASHH; and (d) formed a competing venture using confidential information of ASHH, including language copied from the Dorn Homes PPM for use in a draft business plan.

211.    Each of these examples is a breach of Erickson's confidentiality obligations. Taken together, Erickson's conduct is particularly egregious.

212.    Upon information and belief, there are other violations of Erickson's confidentiality obligations of which ASH is not currently aware and which will be revealed through discovery in this action.

213.    Accordingly, ASH is entitled to an injunction prohibiting Erickson from engaging in such offending conduct, as well as damages (in an amount to be determined at trial, to the extent damages can be quantified) resulting from Erickson's willful misconduct, gross negligence in connection with ASH's business and affairs, and material breaches of the Consulting Agreement and Employment Agreement.

## COUNT TWO
## BREACH OF CONTRACT - LPA
### (ASHH and ASH-GH against the LPA Sellers)

214.    ASH incorporates and repeats the allegations of Paragraphs 1-202 herein.

215.    The Land Purchase Agreement (Ex. 2) is a valid, binding, and enforceable contract among and between ASH, Erickson, Rose Anne Erickson, and the other LPA Sellers, including Defendants GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.), Tiger Creek Development, Inc., Cusseta Road, LLC, Grey Rock Development, LLC, Windsong Bonacre LLC, Erickson Investments, Inc., Sage Development, Inc., and Carrollton Development, LLC.

216.    Erickson and the other LPA Sellers own lots that are subject to the LPA and are part of the Takedown Schedule.

217.    ASH has complied with the terms and obligations of the LPA.

218.    As explained herein, the Ericksons, acting individually and on behalf of the other LPA Sellers, have failed and refused to comply with the terms and obligations of the LPA.  The Ericksons have acknowledged that breach of this Agreement would result in irreparable harm.  *See* APA § 6.5(b).

219.    First, the Ericksons, acting individually and on behalf of other LPA Sellers, have refused to permit ASH-GH to take down lots that are fully developed and have been released for purchase.  ASH-GH is ready, willing, and able to take down the lots it attempted to purchase in the third quarter of 2021 and the fourth quarter of 2021, as well as the additional lots that have been released for purchase but not yet taken down.

220.    Second, Erickson has refused to agree on the order in which Phase C lots will be developed, in breach of Section 10 of the LPA.

221.    Third, the LPA requires that any future lots Erickson or the other LPA Sellers acquire or develop and offer for sale in Georgia or Alabama (i.e., the Future ROFO Lots) must be first offered to ASH-GH.  Ex. 2, LPA § 14.  According to property records and publicly available information, Erickson has developed and offered for sale lots in and around Dallas, Georgia since the Acquisition, none of which were offered to ASH-GH.

222.    ASH has provided notice that Erickson and the other LPA Sellers have failed to comply with certain terms of the LPA, including in letters dated February 17, 2021, March 23, 2021, April 8, 2021, June 21, 2021, June 24, 2021, July 12, 2021, and December 30, 2021.  The LPA Sellers did not cure within 15 days of receiving such notice.

223.    Unless a default is cured within 15 days of providing a formal notice of default, the $2.5 million deposit "shall promptly be returned" by Erickson, ASH "shall have no further obligation to make Deferred Payments" to Erickson, and ASH may pursue other rights or remedies, including "specific performance to compel [Erickson and/or the other LPA Sellers] to improve and/or sell the Lots to [ASH] and recovering all monetary damages and lost profits arising from [the LPA Seller's] default."  *Id.* § 35(c)(i)-(iii).  On July 12, 2021, ASH provided notice that it intends to pursue such remedies.

224.    Erickson and the other LPA Sellers have breached material terms of the LPA and have defaulted under Section 35.  ASH is entitled to specific performance to avoid irreparable harm from its inability to purchase lots, as well as any monetary damages that can be quantified, in an amount to be determined at trial.

**COUNT THREE**
**BREACH OF CONTRACT - APA (NON-COMPETE)**
**(ASH-GH against David Erickson)**

225.    ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

226.    The Asset Purchase Agreement (Ex. 1) is a valid, binding, and enforceable contract between ASH-GH and Erickson.

227.    The APA restricts Erickson, for a three-year period extended by the duration of any breach, from "participat[ing] in a competitive homebuilding operation or business within 100 miles of the geographic markets of each Seller as of [November 15, 2019], which shall include Columbus, Georgia; Atlanta, Georgia; Macon, Georgia; Dothan, Alabama; and Montgomery, Alabama" (the "Restricted Area"). Ex. 1, APA § 6.5(a). The restrictive covenant remains in effect.

228.    Erickson has breached Section 6.5(a) by building and selling homes in and around Dallas, GA. Since November 2019, Erickson and GH Lot Holdings of Atlanta have built and sold dozens of homes in or near Dallas, Georgia, for a total of at least $10.8 million. All of these homes are within 100 miles of Atlanta, Georgia, and some are within 100 miles of the boundary of Columbus, GA. The building, development, listing, and sale of the homes each constitute a separate and distinct breach of Erickson's non-compete obligations.

229.    Erickson also breached Section 6.5(a) by establishing the headquarters for various competitive homebuilding operations and businesses in the same Columbus, GA office park in which ASH-GH is headquartered, which is within the Restricted Area. Such entities either compete with ASH-GH to build and sell homes in the Restricted Area (e.g., GH Lot Holdings of Atlanta) or compete with ASH-GH for the same homebuilding resources in the Columbus area (e.g., employees).

230.    ASH-GH is entitled to an injunction against Erickson to cease such offending conduct as well as any damages that can be quantified (in an amount to be determined at trial) as result of Erickson's breach of Section 6.5 of the APA.

## COUNT FOUR
## BREACH OF CONTRACT - COPYRIGHT ASSIGNMENT AGREEMENT
### (ASH-GH against GH Lot Holdings, Inc.)

231.     ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

232.     The Copyright Assignment Agreement is a valid, binding, and enforceable contract between and among ASH-GH and Defendant GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc), among other entities.  ASH-GH owns all right, title, and interest in and to the Grayhawk Building Plans.  *See* Ex. 4, Copyright Assignment Agreement § 1.

233.     Pursuant to Section 1 of the Copyright Assignment Agreement, GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.) and other related entities "s[old], assign[ed], convey[ed], and transfer[red]" to ASH-GH, and ASH-GH "purchase[d], acquire[d], accept[ed], and assum[ed]" from Erickson, "all worldwide right, title, and interest in, to, and under all Copyrights, whether registered or unregistered, and all elements thereof."

234.     This assignment included, "without limitation, any and all derivative works of any of the foregoing and all privileges and goodwill associated with the Copyrights."  *Id.*

235.     Accordingly, GH Lot Holdings, Inc. has no right, title, interest, or proper basis to use any of ASH-GH's Copyrights, including the Grayhawk Building Plans.

236.     Nevertheless, GH Lot Holdings, Inc., through Erickson, continues to use ASH-GH's Copyrights, including the Grayhawk Building Plans, to build homes and by duplicating, distributing, and displaying the Copyrights, significant portions of the Copyrights, or improper derivatives of the Copyrights.

237.     Erickson and GH Lot Holdings, Inc. have acknowledged that breach of this Agreement would result in irreparable harm to ASH-GH.  *See* APA § 6.5(b).

238.    GH Lot Holdings, Inc.'s conduct constitutes a breach of the Copyright Assignment Agreement, and ASH-GH is entitled to an injunction and monetary damages, including lost goodwill and profits, in an amount to be determined at trial.

**COUNT FIVE**
**COPYRIGHT INFRINGEMENT**
**(ASH-GH against David Erickson, GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc.)**

239.    ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

240.    ASH-GH owns all right, title, and interest in and to the Grayhawk Building Plans. *See id.*

241.    These copyrighted plans have been filed and registered with the U.S. Copyright Office, and the Copyright Assignment Agreement has been recorded against all registered copyrights listed on Schedule 1 of the Copyright Assignment Agreement.  The copyrighted material is original and fixed in a tangible medium of expression.

242.    Erickson, individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc., has infringed ASH-GH's copyrights, without ASH-GH's authorization, by duplicating, distributing, displaying, and using significant copyrightable portions of the Grayhawk Building Plans, or, alternatively, making an unauthorized derivative work that is based upon and copies substantial portions of the copyrighted subject matter.

243.    Erickson, GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc. have acted knowingly and willfully, in conscious disregard of the rights of ASH-GH.

244.     In addition, GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc. have been unjustly enriched as a direct and proximate result of their wrongful acts.

245.     ASH-GH has suffered damages and prays for either (a) disgorgement of all profits from Defendants' infringement of the copyrighted works, including without limitation the sale of homes built using the Grayhawk Building Plans (and any derivative works) or (b) statutory damages of up to $150,000 per instance of copyright infringement.

**COUNT SIX**
**BREACH OF CONTRACT - TRADEMARK ASSIGNMENT AGREEMENT**
**(ASH-GH against GH Lot Holdings, Inc.)**

246.     ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

247.     The Trademark Assignment Agreement (Ex. 3) is a valid, binding, and enforceable contract between and among ASH-GH and Defendant GH Lot Holdings, Inc. (f/k/a Grayhawk Homes, Inc.).  ASH-GH is the owner of the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

248.     Pursuant to the Trademark Assignment Agreement, Erickson "s[old], assign[ed], convey[ed], and transfer[red]" to ASH-GH, and ASH-GH "purchase[d], acquire[d], accept[ed], and assum[ed]" from Erickson, "all worldwide right, title, and interest in, to, and under all Trademarks, including, without limitation, any and all common law rights thereto and the goodwill of the Business symbolized thereby." Ex. 3, Trademark Assignment Agreement § 1.

249.     The defined term "Trademarks" includes "service marks, trade names, trade secrets, brand names, logos and corporate names, slogans, trade dress and other indicia of source of origin, whether or not registered." *Id.*, Recital B.

250.     Accordingly, GH Lot Holdings, Inc. has no right, title, interest, or proper basis to use or disseminate any of ASH-GH's Trademarks, including the "Grayhawk" and/or "Grayhawk

57

Homes" trademark, trade name and logo and any similar trade names, trademarks, service marks, corporate names, or slogans.

251.    As explained herein, GH Lot Holdings, Inc., through Erickson, has used ASH-GH trademarks, trade names and logos (e.g., "Grayhawk" and/or "Grayhawk Homes") on documents, materials, and signage provided to the public, brokers, realtors, and others for the marketing and sale of homes that Erickson has developed through "Grayhawk Homes of Atlanta" and "Grayhawk Homes of South Carolina."

252.    Erickson and GH Lot Holdings, Inc. have acknowledged that breach of this Agreement would result in irreparable harm to ASH-GH.  *See* APA § 6.5(b).

253.    GH Lot Holdings, Inc.'s conduct constitutes a breach of the Trademark Assignment Agreement, and ASH-GH is entitled to an injunction, as well as monetary damages, including for lost goodwill and profits, in an amount to be determined at trial.

## <u>COUNT SEVEN</u>
## FEDERAL UNFAIR COMPETITION (TRADE NAME)
### (ASH-GH against David Erickson, GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc.)

254.    ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

255.    ASH-GH is the owner of the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

256.    ASH-GH, including by and through its affiliates, has used and continues to use the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names, and variations thereof, in connection with building and selling single-family homes in Georgia and Alabama.

257.    Individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc., Erickson's unlicensed, unconsented to, and otherwise unauthorized use of ASH-GH's "Grayhawk" and/or "Grayhawk Homes"

trademarks and trade names and/or variations thereof in connection with his directly competing building and selling of single-family homes has and is likely to cause confusion, or to cause mistake, or to deceive consumers and the relevant public into falsely believing that Defendants' services are provided by, or are affiliated, connected or associated with, ASH-GH and/or the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

258.   Erickson, individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc., has represented that certain entities are affiliated with Grayhawk Homes, including Grayhawk Homes of Atlanta Corporation and Grayhawk Homes of South Carolina, Inc.

259.   Erickson's representations regarding these two entities constitute false and misleading descriptions of fact and false and misleading representations of fact.

260.   Erickson's actions have caused and are likely to cause confusion and mistake, and to deceive as to the affiliation of Grayhawk Homes of Atlanta Corporation and Grayhawk Homes of South Carolina, Inc., and their respective goods and/or services.  His use of the "Grayhawk" and/or "Grayhawk Homes" trademark and trade name is an improper use of trademarks and trade names that are within ASH-GH's control and ownership.

261.   The foregoing acts of Erickson, individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc. , constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Erickson has acted knowingly and willfully, in conscious disregard of the rights of ASH-GH.

262.   In addition to irreparable harm from the unauthorized use of its intellectual property, Defendants have been unjustly enriched as a direct and proximate result of their wrongful acts, and ASH-GH is suffering damages in an amount to be determined at trial.

**COUNT EIGHT**
**GEORGIA TRADEMARK INFRINGEMENT - O.C.G.A. § 23-2-55**
**(ASH-GH against David Erickson, GH Lot Holdings, Inc., GH Lot Holdings of Atlanta**
**Corporation, and GH Lot Holdings of South Carolina, Inc. )**

263.   ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

264.   ASH-GH is the owner of the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

265.   ASH-GH, including by and through its affiliates, has used and continues to use the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names, and variations thereof, in connection with building and selling single-family homes in Georgia and Alabama.

266.   Individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc., Erickson's unlicensed, unconsented to, and otherwise unauthorized use of ASH-GH's "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names and/or variations thereof in connection with his directly competing building and selling of single-family homes has and is likely to cause confusion, or to cause mistake, or to deceive consumers and the relevant public into falsely believing that Defendants' services are provided by, or are affiliated, connected or associated with, ASH-GH and/or the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

267.   Erickson, individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc., has represented that certain entities remain affiliated with ASH-GH's Grayhawk Homes operations based in Columbus, GA, including Grayhawk Homes of Atlanta Corporation and Grayhawk Homes of South Carolina, Inc.

268.   Erickson's representations regarding these two entities constitute false and misleading descriptions of fact and false and misleading representations of fact.

269.    Erickson's actions have caused and are likely to cause confusion and mistake, and to deceive as to the affiliation of Grayhawk Homes of Atlanta Corporation and their respective goods and/or services.  His use of the "Grayhawk" and/or "Grayhawk Homes" trademark and trade name is an improper use of trademarks and trade names that are within ASH-GH's control and ownership.

270.    The foregoing acts of Erickson, individually and on behalf of GH Lot Holdings, Inc., GH Lot Holdings of Atlanta Corporation, and GH Lot Holdings of South Carolina, Inc., constitute trademark infringement in violation of O.C.G.A. § 23-2-55.  Erickson has acted knowingly and willfully, in conscious disregard of the rights of ASH-GH.

271.    In addition to irreparable harm from the unauthorized use of its intellectual property, Defendants have been unjustly enriched as a direct and proximate result of their wrongful acts, and ASH-GH is suffering damages in an amount to be determined at trial.

## COUNT NINE
## VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT - O.C.G.A. §§ 10-1-370, *et seq.*
### (ASH-GH against David Erickson, GH Lot Holdings, Inc., and GH Lot Holdings of Atlanta Corporation)

272.    ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

273.    ASH-GH is the owner of the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

274.    ASH-GH, including by and through its affiliates, has used and continues to use the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names, and variations thereof, in connection with building and selling single-family homes in Georgia and Alabama.

275.    Individually and on behalf of GH Lot Holdings, Inc. and GH Lot Holdings of Atlanta Corporation, Erickson's unlicensed, unconsented to, and otherwise unauthorized use of ASH-GH's "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names and/or variations

thereof in connection with his directly competing building and selling of single-family homes has caused and is likely to cause confusion, or to cause mistake, or to deceive consumers and the relevant public into falsely believing that Erickson's services are provided by, or are affiliated, connected or associated with, ASH-GH and/or the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

276.   Individually and on behalf of GH Lot Holdings, Inc. and GH Lot Holdings of Atlanta Corporation, Erickson has represented that certain entities are affiliated with ASH-GH and its Grayhawk Homes operations based in Columbus, GA, including Grayhawk Homes of Atlanta Corporation and Grayhawk Homes of South Carolina, Inc.

277.   Erickson's representations regarding these entities constitute false and misleading descriptions of fact and false and misleading representations of fact.

278.   Erickson's actions have caused and are likely to cause confusion and mistake, and to deceive as to the affiliation of Grayhawk Homes of Atlanta Corporation and Grayhawk Homes of South Carolina, Inc. and their respective goods and/or services.  His use of the "Grayhawk" and/or "Grayhawk Homes" trademark and trade name is an improper use of trademarks and trade names that are within ASH-GH's control and ownership.

279.   The foregoing acts of Erickson, GH Lot Holdings, Inc., and GH Lot Holdings of Atlanta Corporation constitute deceptive trade practices in violation of O.C.G.A. §§ 10-1-370, *et seq*.  Erickson, GH Lot Holdings, Inc., and GH Lot Holdings of Atlanta Corporation have acted knowingly and willfully, in conscious disregard of the rights of ASH-GH.

280.   In addition to irreparable harm from the unauthorized use of its intellectual property, Erickson, GH Lot Holdings, Inc., and GH Lot Holdings of Atlanta Corporation have

been unjustly enriched as a direct and proximate result of their wrongful acts, and ASH-GH is suffering damages in an amount to be determined at trial.

## COUNT TEN
### VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT -
### S.C. CODE §§ 39-5-10, *et seq.*
### (ASH-GH against David Erickson, GH Lot Holdings, Inc., and
### GH Lot Holdings of South Carolina, Inc.)

281.    ASH-GH incorporates and repeats the allegations of Paragraphs 1-202 herein.

282.    ASH-GH is the owner of the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

283.    ASH-GH, including by and through its affiliates, has used and continues to use the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names, and variations thereof, in connection with building and selling single-family homes in Georgia and Alabama.

284.    Individually and on behalf of GH Lot Holdings, Inc. and GH Lot Holdings of South Carolina, Inc., Erickson's unlicensed, unconsented to, unlawful, and otherwise unauthorized use of ASH-GH's  "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names and/or variations thereof in connection with his directly competing building and selling of single-family homes has caused and is likely to cause confusion, or to cause mistake, or to deceive consumers and the relevant public into falsely believing that Erickson's services are provided by, or are affiliated, connected or associated with, ASH-GH and/or the "Grayhawk" and/or "Grayhawk Homes" trademarks and trade names.

285.    Individually and on behalf of GH Lot Holdings, Inc. and GH Lot Holdings of South Carolina, Inc., Erickson has represented that certain entities are affiliated with Grayhawk Homes, including Grayhawk Homes of South Carolina, Inc.

286.    Erickson's representations regarding this entity constitutes false and misleading descriptions of fact and false and misleading representations of fact.

287.   Erickson's actions have caused and are likely to cause confusion and mistake, and to deceive as to the affiliation of Grayhawk Homes of South Carolina, Inc. and its respective goods and/or services.  His use of the "Grayhawk" and/or "Grayhawk Homes" trademark and trade name is an improper use of trademarks and trade names that are within ASH-GH's control and ownership.

288.   The foregoing acts of Erickson, GH Lot Holdings, Inc., and GH Lot Holdings of South Carolina, Inc. constitute unfair and deceptive trade practices in violation of S.C. Code §§ 39-5-10, *et seq.*

289.   In addition to irreparable harm from the unauthorized use of its intellectual property, Erickson, GH Lot Holdings, Inc., and GH Lot Holdings of South Carolina, Inc. have been unjustly enriched as a direct and proximate result of their wrongful acts, and ASH-GH is suffering damages in an amount to be determined at trial.

## V.   PRAYER FOR RELIEF

WHEREFORE, ASH requests that judgment be entered in its favor and against Defendants and that ASH be awarded the following relief:

A.     A judgment: (a) finding Erickson and the other LPA Sellers in breach of the LPA; (b) ordering specific performance to require Erickson and the other LPA Sellers to meet their obligations under the LPA, including by (i) making finished lots available for purchase by ASH-GH pursuant to the Takedown Schedule, and (ii) permitting ASH-GH to purchase more than the "minimum" number of lots in the Takedown Schedule, to the extent such lots are available;

B.     A temporary restraining order, preliminary injunction during the pendency of this action, and a permanent injunction or specific performance order requiring

Erickson and the other LPA Sellers to comply with the LPA by permitting ASH-GH to take down the minimum number of lots per quarter prescribed by the Takedown Schedule, as well as any additional finished lots that are available for purchase.

C.      A judgment awarding ASH any quantifiable monetary damages and lost profits arising from Erickson's and the other LPA Sellers' breach of the LPA, in an amount to be determined at trial;

D.      A temporary restraining order, preliminary injunction during the pendency of this action, and a permanent injunction thereafter restraining Erickson, his agents, employees, attorneys, and all others in active concert or participation with any of them from obtaining, using, or disclosing ASH's confidential information for any improper purpose;

E.      A judgment awarding ASH any quantifiable monetary damages and lost profits arising from Erickson's breach of the confidentiality provisions of the Employment Agreement and Consulting Agreement, in an amount to be determined at trial;

F.      A temporary restraining order, preliminary injunction during the pendency of this action, and a permanent injunction thereafter restraining Erickson, his agents, employees, attorneys, and all others in active concert or participation with any of them from operating a competitive homebuilding operation within the Restricted Area described in the non-compete in Section 6.5(a) of the APA;

G.      A judgment awarding ASH any quantifiable monetary damages and lost profits arising from Erickson's breach of the APA non-compete, in an amount to be determined at trial;

H.    A judgment: (a) finding GH Lot Holdings, Inc. in breach of the Copyright Assignment Agreement and Trademark Assignment Agreement; and (b) prohibiting the use of any of the Intellectual Property (as defined by the agreements) assigned to and currently owned by ASH-GH;

I.    A judgment awarding ASH-GH monetary damages, including for lost profits and lost goodwill, from GH Lot Holdings, Inc.'s breach of the Copyright Assignment Agreement and Trademark Assignment Agreement, in an amount to be determined at trial;

J.    A judgment finding that Defendants have infringed and willfully infringed, and are willfully infringing, ASH-GH's copyrights—specifically including the Grayhawk Building Plans;

K.    A judgment finding that Defendants have infringed and willfully infringed, and are willfully infringing by improperly using deceptive trademarks and trade names confusingly similar to the "Grayhawk" and/or "Grayhawk Homes" trademark and trade name owned by ASH-GH, including but not limited to "Grayhawk Homes of Atlanta" and "Grayhawk Homes of South Carolina";

L.    A temporary restraining order, preliminary injunction during the pendency of this action, and a permanent injunction thereafter restraining Defendants, their agents, employees, attorneys, and all others in active concert or participation with any of them from (a) using, offering for use, displaying the content of (in whole or part), or engaging in any act likely to cause confusion, mistake, or to mislead as to origination and the source of ASH-GH's trademarks and trade names, specifically, "Grayhawk" and "Grayhawk Homes"; and (b) an order either seizing all

Defendants' counterfeit marks—including "Grayhawk Homes of Atlanta" and "Grayhawk Homes of South Carolina"—or an order requiring Defendants to destroy all such counterfeit marks;

M.     A temporary restraining order, preliminary injunction during the pendency of this action, and a permanent injunction thereafter restraining Defendants, their agents, employees, attorneys, and all others in active concert or participation with any of them from: (a) using, offering for use, displaying the content of (in whole or part), or engaging in any act likely to cause confusion, mistake, or to mislead as to origination and source of the Grayhawk Homes goods, services, trademark and trade name, and copyrighted Grayhawk Building Plans, and/or any other commercial activities by Defendants that misrepresent the nature, characteristics, or qualities thereof; and (b) infringing ASH-GH's copyrights (including the Grayhawk Building Plans);

N.     An impoundment and destruction order requiring Defendants to deliver up all copies made or used in violation of ASH-GH's copyrights, and all articles by means of which such copies may be reproduced;

O.     Disgorgement of Defendants' profits from infringement in an amount to be proven at trial, or statutory damages for each copyright violation under 17 U.S.C. § 504;

P.     Such actual damages as may be proven as a result of Defendants' wrongdoing;

Q.     Trebling of actual damages as may be proven as a result of Defendants' knowing and willful conduct in conscious disregard of the rights of ASH;

R.     Punitive damages to the extent permitted by governing law;

S.     An award of ASH's reasonable attorneys' fees and costs; and

T.      Any further relief as is deemed justified and appropriate.

Dated: January 31, 2022                          Respectfully submitted,

                                                 */s/ Jacob A. Kramer*

                                                 Jerry A. Buchanan
                                                 M.D. Ga. Bar No. 092200
                                                 **BUCHANAN LAW FIRM, PC**
                                                 P.O. Box 2848
                                                 The Corporate Center, Suite 614
                                                 233 12th Street
                                                 Columbus, Georgia 31902
                                                 Phone:          (762) 208-6982
                                                 E-mail:         jab@thebuchananlawfirm.com

                                                 Jacob A. Kramer
                                                 *Admitted pro hac vice*
                                                 **FAEGRE DRINKER BIDDLE & REATH, LLP**
                                                 1500 K Street NW, Suite 1100
                                                 Washington, D.C. 20005
                                                 Phone:          (202) 230-5289
                                                 E-mail:         jake.kramer@faegredrinker.com

                                                 *Counsel for Plaintiffs*