IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

AMERICAN SOUTHERN HOMES          *
HOLDINGS, LLC and ASH-GRAYHAWK,
LLC,                             *

    Plaintiffs,                  *
                                          CASE NO. 4:21-CV-95 (CDL)
vs.                              *

DAVID ERICKSON, *et al.*,        *

    Defendants.                  *

---

O R D E R

    ASH-Grayhawk, LLC ("ASH-GH")'s partial motion to dismiss Defendants' amended counterclaims (ECF No. 95) is denied.  The remainder of this Order explains why.

MOTION TO DISMISS STANDARD

    Any explanation of the Court's rationale must begin with the legal standard applicable to the pending motion, a standard that is often misapplied.  The Court has attempted in the past, unsuccessfully it seems, to minimize this misapplication by cautioning counsel, including those in this action, to resist the *Twombly/Iqbal* compulsion.  *See* Order Den. Defs.' Mot. to Dismiss (Sept. 22, 2021), ECF No. 47; *Barker ex rel. U.S. v. Columbus Reg'l Healthcare Sys., Inc.,* 977 F. Supp. 2d 1341, 1345-46 (M.D. Ga. 2013).  But the urge has once again proved to be too much.

The standard for determining whether a complaint or counterclaim adequately states a claim upon which relief may be granted is not complicated. "To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard has two important components—a claimant's *factual* allegations must be accepted as true, and those accepted facts must plausibly support a finding that the essential elements of the claim have been stated. A claimant need not prove his claim at this stage of the proceedings; nor must he even point to evidence to create a genuine factual dispute. He must simply *state* a plausible claim. "Plausibility" to some lawyers seems so elastic that they try to extend it to a subjective and heightened sense of probability. But it actually means that the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the counterclaims. *Id.* at 556. While judicial arrogance may give rise to the temptation of evaluating whether a claimant will ultimately prevail, "Rule 12(b)(6) does not permit dismissal of a well-pleaded [counterclaim] simply because 'it strikes a savvy

judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).  With these principles in mind, the Court turns to ASH-GH's pending motion to dismiss Defendant David Erickson and GH Lot Holdings's (hereinafter collectively "Defendants") second, third, and seventh counterclaims for breach of the Asset Purchase Agreement's warranty provision, breach of the Reeves contract, and quantum meruit.

DISCUSSION

## I.   Second Counterclaim – Breach of the Warranty Provision

Defendants claim that ASH-GH breached the Asset Purchase Agreement by improperly withholding Defendants' warranty deposit. The alleged facts relevant to this claim are as follows. David Erickson entered into an agreement to sell the assets of his homebuilding company, Grayhawk Homes, Inc., to Plaintiffs.  This agreement, the Asset Purchase Agreement, contained a warranty clause providing for the deposit of $250,000.00 for ASH-GH to use to provide warranty services as required by the parties' Transition Services Agreement.  Am. Countercls. ¶ 18, ECF No. 87 at 60.  The parties agreed that these funds would be returned by November 15, 2021, which was two years after closing, although the Asset Purchase Agreement contained no such deadline.  *Id.*  ASH-GH has not yet returned any portion of the warranty deposit.  *Id.*

The purpose of the warranty deposit was to provide "certain warranty services by Buyer after the Closing Date pursuant to the [Transition Services Agreement]." Am. Countercls. Ex. 1, Asset Purchase Agreement § 2.3, ECF No. 87-1.  ASH-GH argues that it is not required to return any of the Warranty Amount because the Asset Purchase Agreement is silent as to that issue.  Defendants maintain that the unused portion of the deposit was refundable 24 months after the Asset Purchase Agreement's closing date.  Defendants argue that the word "deposit" contemplates a refundable sum of money and that 24 months is a reasonable amount of time for ASH-GH to issue that refund in the absence of a specific contractual deadline.

Generally, the "interpretation of a contract is . . . a question of law to be resolved by the court." *Willeson v. Ernest Comms., Inc.*, 746 S.E.2d 755, 758 (Ga. Ct. App. 2013).  The question here is what "deposit" means.  And the first step is ascertaining whether its meaning under the circumstances presented here is ambiguous.  *Id.*  That determination requires an analysis of whether the plain terms of the contract are subject to more than one reasonable interpretation.  *Bowers v. Today's Bank*, 820 S.E.2d 459, 462-63 (Ga. Ct. App. 2018).  Here, "deposit" could mean a payment that is non-refundable or a deposit that must be returned after the conditions for which the deposit was made have been satisfied.  Thus, the plain meaning alone does not eliminate

4

the ambiguity of the term.   As such, the Court must resort to traditional rules of contract construction to derive the parties' intended meaning of the word.   *Willeson*, 746 S.E.2d at 758.

Under Georgia law, the rules of contract interpretation provide that "[w]ords generally bear their usual and common signification" and that "the whole contract should be looked to in arriving at the construction of any part."  O.C.G.A. § 13-2-2.  If the time for performance is not stated in the contract, performance must be "completed within a reasonable time."  O.C.G.A. § 13-4-20.

Applying these principles, the Court concludes that the term "deposit" contemplated that the unused portion of the Warranty Amount was refundable when ASH-GH's obligation to provide warranty services ended.   The warranty provision, as a whole, indicates that Plaintiffs only held the money to provide required warranty services.   Further, when used in other contracts described in the Asset Purchase Agreement, the word "deposit" generally referred to refundable money.   *See, e.g.*, Am. Countercls. Ex. 4, Land Purchase Agreement § 4, ECF No. 87-4.   Taking Defendants' allegations as true, Defendants allege that ASH-GH has failed to return the unused portion of the Warranty Amount despite the fulfillment of ASH-GH's

obligations to provide warranty services.[1]  Thus, the Court denies ASH-GH's motion to dismiss Defendants' second counterclaim.

## II.  Third Counterclaim – Breach of the Reeves Contract

Defendants claim that ASH-GH breached an agreement to build a house for Ellen Reeves.  The alleged facts relevant to this claim are as follows.  The Asset Purchase Agreement contained provisions detailing when and how Plaintiffs would assume Grayhawk's business obligations.  Am. Countercls. ¶ 114.  Specifically, Plaintiffs would assume certain contracts if a copy of the contract was provided to Plaintiffs prior to closing and if the contract was disclosed on the Seller Disclosure Letter attached to the Asset Purchase Agreement.  Prior to closing, Grayhawk entered into a contract with Defendant Tiger Creek Development, Inc. to build a home for Ellen Reeves.  *Id.* ¶ 80.  Defendants disclosed this contract (the "Reeves contract") in schedules attached to the Asset Purchase Agreement.  *Id.* ¶ 117.   ASH-GH later denied that it assumed this contract and claimed that it did not receive a copy

---

[1] Defendants argue that the deposit should be refundable 24 months after the closing date of the Asset Purchase Agreement because the Agreement is silent as to a specific date and because the parties agreed, both before and after the Asset Purchase Agreement was executed, that the deposit would be refundable within that timeframe.  The Court, however, interprets the warranty provision to provide that the deposit is refundable once ASH-GH's warranty obligations have ended rather than within any specific calendar date. The Court construes Defendants' claims to allege that these obligations have ended, although Defendants appear to claim ASH-GH's warranty expenses were excessive.  Am. Countercls. ¶ 109 ("ASH grossly inflated the warranty administration costs to avoid [ASH-GH's] obligations under the contract.").

of the Reeves contract until after the Asset Purchase Agreement was signed.

Defendants allege that ASH-GH began performance of the Reeves contract after the closing despite allegedly never receiving a copy of the contract. Specifically, Defendants allege that in the summer of 2020, ASH-GH employees met with Reeves, conducted decorator meetings, executed design paperwork, and accepted payment for Reeves's desired design options. Am. Countercls. ¶ 80. These facts, taken as true and viewed in the light most favorable to Defendants, suggest that ASH-GH received the contract prior to closing or waived its contractual right to receive a copy of the contract prior to assuming it. *See Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 791 S.E.2d 635, 640 (Ga. Ct. App. 2016) (explaining that contractual provisions may be waived if such waiver is "*clear and unmistakable*" (quoting *Vratsinas Const. Co. v. Triad Drywall, LLC*, 739 S.E.2d 493, 496 (Ga. Ct. App. 2013))). As such, the Court denies ASH-GH's motion to dismiss Defendants' third counterclaim.

### III. Seventh Counterclaim — Quantum Meruit

The relevant factual allegations supporting Defendants' counterclaim for quantum meruit are as follows. The parties entered into a Transition Services Agreement when they executed the Asset Purchase Agreement. The Transition Services Agreement allowed Plaintiffs to use Erickson's licenses after the Asset

Purchase Agreement was signed in exchange for allowing Erickson to use ASH-GH support services to complete certain development projects. Am. Countercls. ¶¶ 6, 152. Defendants believed that the Transition Services Agreement covered support services for development projects in Dallas, Georgia and South Carolina. *Id.* ¶¶ 152-153. ASH-GH apparently contends that these development projects violate Erickson's covenant not to compete, and therefore, Defendants are not entitled to support services for projects that violate the parties' covenant not to compete. Although neither the Transition Services Agreement nor the covenant not to compete expressly address whether Defendants were entitled to support services for projects in Dallas, Georgia and South Carolina, ASH-GH takes the position that the parties intended to address this topic in their contracts and argue that no one contemplated that ASH-GH would provide support services that would facilitate Erickson's violation of his covenant not to compete. Defendants maintain that if they have no contractual right to support services for these projects, they have a claim for quantum meruit for the services they provided (the licenses and related services) and for which they were not fairly compensated.

ASH-GH argues that this quantum meruit claim must be dismissed because there is no bona fide dispute as to the existence of a valid contract. And under Georgia law, "[q]uantum meruit is not available when there is an express contract" governing the

subject of dispute. *Watson v. Sierra Contracting Co.*, 485 S.E.2d 563, 570 (Ga. Ct. App. 1997). So, the issue is whether Defendants have adequately alleged facts that, if taken as true, would support the conclusion that no contract covers the situation upon which Defendants' claim for quantum meruit is based. If the parties intended for their contractual agreements to cover this situation, then the quantum meruit remedy is not available.

Defendants argue that the parties never had a "meeting of the minds" as to what would happen if ASH-GH refused to provide support services based on allegations that Defendants' use of those services facilitated Defendants' violation of Erickson's covenant not to compete. They argue they reasonably expected that they would receive support services for projects in Dallas, Georgia and South Carolina when they provided their licenses to ASH-GH for its use. Defendants are correct that "[i]f there is any essential term upon which agreement is lacking, no meeting of the minds of the parties exists, and a valid and binding contract has not been formed." *Auto-Owners Ins. Co. v. Crawford*, 525 S.E.2d 118, 120 (Ga. Ct. App. 1999). Thus, if that is the case here, a quantum meruit claim could be viable.

ASH-GH argues that the disputed support services for which Defendants seek to be compensated are covered by the Transition Services Agreement, and that the terms of that agreement can be applied in the context of Erickson's non-compete requirements.

But at the motion to dismiss stage, Defendants need only allege sufficient facts that, taken as true, establish a plausible claim for relief.  Here, Defendants allege that the consideration for the Transition Services Agreement specifically contemplated support services connected to the completion of projects in Dallas, Georgia and South Carolina.  Am. Countercls. ¶ 152.  They allege alternatively a claim for quantum meruit relief if it is determined that the contract does not permit use of support services for projects in Dallas, Georgia or South Carolina or that the contract is silent on the issue.  *Id.* ¶ 153.  Defendants allege facts supporting the following: (1) their services were valuable to ASH-GH, (2) their services were at the request of ASH-GH or were knowingly accepted by ASH-GH, (3) ASH-GH's receipt of these services without compensation would be unjust, and (4) Defendants expected compensation at the time they provided said services. *Memar v. Jebraeilli*, 694 S.E.2d 172, 175 (Ga. Ct. App. 2010) (applying these quantum meruit factors).  Thus, Defendants have alleged a plausible claim for quantum meruit.

As a final matter, the Court addresses two additional specific arguments asserted by ASH-GH, which the Court find unpersuasive. First, ASH-GH's reliance upon *Harden v. TRW, Inc.*, 959 F.2d 201, 206 (11th Cir. 1992) is misplaced.  In *Harden*, the Eleventh Circuit found that an entire contract was not voided when there was no meeting of the minds as to a "particular component of a contingency

10

fee term in the contract." *Id.*   Unlike *Harden*, however, the
dispute in the current matter involves terms central to the subject
matter of the contract—the services contemplated in the Transition
Services Agreement.   Thus, if—as ASH-GH contends—there was no
meeting of the minds as to these essential terms, then there was
no valid contract for purposes of Defendants' alternative quantum
meruit claim.   See *Auto-Owners Ins. Co.*, 525 S.E.2d at 120 ("If
there is any essential term upon which agreement is lacking, no
meeting of the minds of the parties exists, and a valid and binding
contract has not been formed.").   Second, Defendants can obviously
assert alternative claims for relief.   *See* Fed. R. Civ. P. 8(a)(3)
(expressly authorizing the assertion of alternative claims).   And
Defendants' incorporation of allegations from counterclaim six,
which may be inconsistent with a claim for quantum meruit in
counterclaim seven, should be construed in light of the other
allegations in their counterclaim.   Thus, they are being
incorporated by reference only to the extent that they are
consistent with their claim for alternative quantum meruit relief.
It's really quite simple:   Defendants contend the applicable
contract requires that they be provided with support services in
exchange for their providing Plaintiffs with licenses and related
services; but in the alternative if it does not, they seek
compensation for their services based upon a theory of quantum
meruit.   Defendants may not be able to obtain a recovery under

both of these two arguably conflicting theories, but nothing prevents them from alleging such alternative claims at this stage of the proceedings.  ASH-GH's motion to dismiss Defendants' seventh counterclaim for quantum meruit relief is denied.[2]

CONCLUSION

For the foregoing reasons, ASH-GH's partial motion to dismiss Defendants' amended counterclaims (ECF No. 95) is denied.

IT IS SO ORDERED, this 19th day of August, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[2] The Court notes that it has not yet ruled on the enforceability of any covenant not to compete.  That ruling may affect this counterclaim, but the effect of that ruling on this counterclaim can best be addressed at the summary judgment stage.