IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

AMERICAN SOUTHERN HOMES          *
HOLIDNGS LLC and ASH-GRAYHAWK
LLC,                             *

    Plaintiffs,                  *

vs.                              *          CASE NO. 4:21-CV-95 (CDL)

DAVID B. ERICKSON, *et al.*,     *

    Defendants.                  *

---

O R D E R

This order addresses the pending motions that the Court did not rule on at the pretrial conference on August 15, 2023. The parties should refer to the transcript of the pretrial conference for other rulings. The Court is familiar with the facts giving rise to this action given its recent order on the summary judgment motions. *Am. S. Homes Holdings, LLC v. Erickson*, No. 4:21-CV-95 (CDL), 2023 WL 4032657 (M.D. Ga. June 15, 2023). The Court finds it unnecessary to recount the facts here.

**I.  Plaintiffs' Motion in Limine re "American Southern Homes Holdings, LLC's Fifth Amended LLC Agreement" (ECF No. 218)**

After David Erickson resigned from American Southern Homes Holdings ("ASH Holdings") and announced that he was pursuing other ventures, ASH Holdings amended its LLC agreement to impose certain restrictions on members actively competing with the company. Erickson brought a counterclaim based on the amendment of the LLC

agreement, but it was dismissed.  Plaintiffs argue that the fifth amended LLC agreement is irrelevant to the remaining claims. Defendants contend that the amended LLC agreement was part of a retaliatory campaign to get back at Erickson for resigning; their argument seems to be that the amended LLC agreement tends to show that Plaintiffs were not harmed by Erickson's use of Plaintiffs' trademarks past the grace period because they only objected to the use of the marks after Erickson resigned and started competing. Then, around the same time, they amended the LLC agreement.  The Court is not convinced that the LLC agreement has any probative value on the trademark issue, and Defendants did not offer a solid basis for concluding that the amendment of the LLC agreement is relevant to any remaining issues in the case.  This motion in limine is granted.

## II.  Plaintiffs' Motion in Limine re "Exclusion of Settlement Communications" (ECF No. 222)

Plaintiffs seek to exclude certain "settlement communications," including "Spring 2021 Settlement Correspondence and Draft Term Sheets" and "Post-Preliminary Injunction Takedown Communications."  Federal Rule of Evidence 408(a) prohibits using evidence of compromise offers and negotiations "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Rule 408(b) provides exceptions: "The court may admit this evidence for another

purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Accordingly, the motion in limine is granted to the extent that neither category of settlement communications may be used at trial "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

Plaintiffs acknowledge that they do not seek to exclude the Spring 2021 Settlement Correspondence from being used for purposes permitted under Rule 408(b), including negating a contention of undue delay, so Plaintiffs' motion in limine is denied to the extent it could be construed to seek exclusion of the Spring 2021 Settlement Correspondence for permissible purposes. The Court takes no position at this time on what should be redacted from the documents; the Court is confident that the parties can collaborate to remove inadmissible information.

Regarding the "Post-Preliminary Injunction Takedown Communications," Defendants assert that they are not true settlement communications because (a) they are not labeled as such and (b) they discuss the parties' attempts to comply with their relevant contractual obligations. It is the Court's understanding that the parties engaged in these communications because they wanted to avoid another motion for preliminary injunction and thus

sought compromise on how to do it.  These negotiations do relate to a claim in this action—Count Two—and are aimed at preventing further litigation on that claim.  These communications are thus settlement negotiations, and they may not be introduced "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).  Defendants argue that these communications are admissible under Rule 408(b) as evidence that Plaintiffs failed to mitigate their damages, but their authority is weak.[1]

Even if Rule 408(b) permits the use of settlement communications on the issue of mitigation, Defendants did not establish that Georgia law requires the type of "mitigation" Defendants want to show with the Post-Preliminary Injunction

---

[1] Defendants argue that the Eleventh Circuit conclusively determined, in controlling precedent, that a settlement agreement can be used to show mitigation of damages.  Defendants rely on *Barker v. Niles Bolton Associates, Inc.*, 316 F. App'x 933 (11th Cir. 2009), a disability discrimination case under the Fair Housing Act.  The plaintiff in *Barker* argued that the defendant's university campus—including her campus apartment—was not usable to her, which caused her emotional distress. *Id.* at 937.  But she admitted that she moved into a modified campus apartment that substantially accommodated her disability; those modifications were the result of a prior settlement agreement.  *Id.*  In a non-binding, unpublished opinion, a panel of the Eleventh Circuit concluded that a redacted version of the settlement agreement showing the university's changes to the disabled student's apartment was not offered to show the amount of the plaintiff's claim because dollar costs of the modifications were redacted.  *Id.*  The panel further found that the district court committed no error in permitting evidence of the apartment's modifications to be used for other purposes, like showing that the apartment was usable.  *Id.*  So, in the Court's view, *Barker* does not establish a general principle that Rule 408(b) permits use of settlement communications to establish an affirmative defense of failure to mitigate damages.

Takedown Communications.  Defendants appear to contend that if the jury finds that Defendants breached Section 10 of the Land Purchase Agreement, the jury must determine whether Plaintiffs should have "mitigated" their damages by accepting certain proposals Defendants offered in the Post-Preliminary Injunction Takedown Communications.  Under Georgia law, a party injured by a breach of contract must "lessen the damages as far as is practicable by the use of ordinary care and diligence."  O.C.G.A. § 13-6-5.  For example, if an employer breaches its employment contract by wrongfully terminating an employee, the employee must mitigate damages by looking for a job with another employer.  *Boone v. Atlanta Indep. Sch. Sys.*, 619 S.E.2d 708, 712 (Ga. Ct. App. 2005). Defendants did not point to any Georgia authority establishing that a party injured by a breach of contract must "mitigate" damages by renegotiating the contract with the breaching party, and the Court found no such authority.  Thus, Defendants shall not be permitted to introduce the Post-Preliminary Injunction Takedown Communications.  This portion of the motion in limine is granted.

## III. Plaintiffs' Motion in Limine re "Evidence and Opinions Related to Quantum Meruit Damages" (ECF No. 224)

In Count Seven of their Counterclaim, Defendants assert that they are entitled to quantum meruit recovery because they provided certain services to Plaintiffs, including use of David Erickson's

licenses, but were not paid.[2]  Defendants seek to prove damages on
this claim with the testimony of Charles Foster, who offers an
opinion on the total amount of profits that Plaintiffs generated
from all homes started between November 15, 2019 and July 31, 2021.
Defendants contend that Plaintiffs benefitted from the use of
Erickson's licenses on all these homes.  Plaintiffs do not
challenge Foster's qualifications to calculate their profits, but
they seek to exclude evidence of the amount of profits because
such profits are not the proper measure of damages on the quantum
meruit counterclaim.

"Quantum meruit literally means 'as much as he deserves.'"
*Memar v. Jebraeilli*, 694 S.E.2d 172, 175 (Ga. Ct. App. 2010)
(quoting *Nextel S. Corp. v. R.A. Clark Consulting, Ltd.*, 596 S.E.2d
416, 419 (Ga. Ct. App. 2004)).  "It is an equitable doctrine based
on the concept that no one who benefits from the labor and
materials of another should be unjustly enriched thereby."  *Id.*
(quoting *Nextel S. Corp.*, 596 S.E.2d at 419).  "Where quantum
meruit is applicable, the provider may recover the reasonable value
of goods or services transferred, but value is defined in terms of

---

[2] Plaintiffs contend that they performed the required services for
Defendants under the Transition Services Agreement and that those
services were the consideration for services provided by Erickson to
Plaintiffs.  Defendants argue that the Transition Services Agreement is
void because there was no meeting of the minds on the essential elements
of the contract.  If the jury resolves the factual disputes on the
validity of the Transition Services Agreement in Plaintiffs' favor, then
the jury will not consider the quantum meruit counterclaim.

value to the recipient." *Id.* (emphasis omitted) (quoting *Nextel S. Corp.*, 596 S.E.2d at 419).   To recover in quantum meruit, Defendants must show that they have not already been compensated the reasonable value of the services they conferred on Plaintiff, and they must present evidence of the benefit they conferred on Plaintiffs. *Nelson & Hill, P.A. v. Wood*, 537 S.E.2d 670, 675 (Ga. Ct. App. 2000); *Diegert v. Cedarbrook Homes, Inc.*, 599 S.E.2d 211, 212 (Ga. Ct. App. 2004).

At the pretrial conference, counsel represented that the cases cited in Defendants' response brief establish that an accepted measure of damages under the circumstances of this case would be Plaintiffs' total profits for the period Plaintiffs used Erickson's licenses.   The Court carefully reviewed those cases. None of them establishes the disgorgement-of-profits rule Defendants advocate.   Rather, they show:

♦ A general contractor whose renovation project increased the value of property could show the value of his services with evidence of the fair market value of the property before and after his work. *Memar*, 694 S.E.2d at 175–76.

♦ An executive search firm that placed an employee with an employer could show the value of its services with evidence of its out-of-pocket costs plus evidence of what the employer typically paid search firms to find and place employees. *Nextel S. Corp.*, 596 S.E.2d at 419-20.

♦ A law firm associate who resigned but agreed to continue working on a few of the firm's contingency fee cases for a percentage of the fee conferred no benefit on the firm because the cases were resolved against the firm's client and thus resulted in no fees to the firm. *Jackson v. Ford*, 555 S.E.2d 143, 148 (Ga. Ct. App. 2001).

♦ A landowner who landscaped his neighbor's property without permission or any expectation of compensation could not recover in quantum meruit. *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 553 S.E.2d 662, 669 (Ga. Ct. App. 2001). But if he could recover, "the measure of damages would be the reasonable value of labor and materials *of benefit to the recipient* or the amount which the improvements added to the fair market value of the land, whichever is the smaller." *Id.* (emphasis added).

♦ A law firm that neglected to execute a contingency fee agreement with its client was not entitled to recover a contingency fee under a quantum meruit theory after winning the client's employment discrimination case because it had already sought and received a fee award in the underlying action under the fee-shifting statute and the court awarded the firm its reasonable fees and expenses under the lodestar method. *Nelson & Hill, P.A.*, 537 S.E.2d at 674-75.

Defendants did not cite any authority adopting a disgorgement-of-profits measure of damages for a quantum meruit claim in a case like this one, where the benefit conferred was the use of a builder's license for specific projects.

Defendants argue that even if Plaintiffs' profits are not the correct measure of quantum meruit damages, the Court should permit Foster to testify about Plaintiffs' profits because such testimony establishes that Erickson's services were valuable to Plaintiffs. But no one disputes that the use of Erickson's license was generally valuable to Plaintiffs; no expert is required on this point. For these reasons, the Court grants Plaintiffs' motion in limine (ECF No. 224). Defendants may not introduce evidence of Plaintiffs' profits to establish their quantum meruit claim.

**IV.  Defendants' Omnibus Motion in Limine # 3 (ECF No. 227)**

Defendants seek to exclude evidence of "Remedies Regarding the Deferred Payment and Deposit under LPA § 35(c)."  Defs.' Omnibus Mot. in Limine #3, ECF No. 227-1 at 6.  The Land Purchase Agreements provide for certain remedies if the sellers default and the buyers elect to terminate the agreement (§ 35(b)) or seek specific performance (§ 35(c)).  Those remedies include a return of the buyer's deposit.[3]

Defendants argue that because Plaintiffs' prayer for relief in the operative complaint did not specifically state that Plaintiffs sought a refund of their deposit in their operative complaint, Defendants were unaware that Plaintiffs intended to seek this relief.  But Plaintiffs disclosed the deposit as an element of their damages multiple times, so this is not newly disclosed information.  Defendants' other argument—that they should be permitted to raise a new defense to claims under § 35(c) based on the "late" disclosure—is moot because Plaintiffs elected to pursue damages instead of specific performance on Count Two. This motion is denied.

---

[3] These sections also provide that the buyer has no further obligations to make certain deferred payments.  Plaintiffs represent that they do not intend to introduce evidence on the cessation of deferred payments, so this issue is moot.

**V.    Defendants' Omnibus Motion in Limine # 4 (ECF No. 227)**

Defendants ask the Court to exclude "Damages for Breach of the LPA Beyond the Second Quarter of 2023." Defs.' Omnibus Mot. in Limine #4, ECF No. 227-1 at 8. They argue that Plaintiffs cannot seek future damages for lots that Defendants are not yet required to provide under the Land Purchase Agreement, but this argument was rooted in the fact that Plaintiffs sought specific performance and had not terminated the Land Purchase Agreement. Plaintiffs have now elected to pursue damages instead of specific performance, so this precise ground for excluding future damages is moot and the motion is denied.

**VI.   Defendants' Omnibus Motion in Limine # 5 (ECF No. 227)**

Defendants contend that Plaintiffs did not disclose evidence of actual damages for Count 1 (breach of consulting agreement) and Counts 6-9 (claims based on Defendants' use of Plaintiffs' trademarks and trade name) as required under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), so evidence of actual damages on these claims should be excluded. Plaintiffs do not dispute that they did not disclose a computation of specific monetary damages on these counts. Plaintiffs agree that only equitable remedies are available for Count 9, and they seek to recover only nominal damages on Counts 1 and 6. Defendants' motion to exclude actual damages evidence is granted to the extent that Plaintiffs may not introduce actual damages evidence on Counts 1, 6, and 9. This

ruling shall not preclude Plaintiffs from pursuing nominal damages on Counts 1 and 6.

Regarding Counts 7 and 8, Plaintiffs assert that the jury may award actual damages that are reasonably calculable from the evidence. But Defendants contend that Plaintiffs did not disclose any monetary damages that were not articulated by their expert, such as specific monetary damages that Plaintiffs incurred as a result of Defendant's use of their trademarks. Plaintiffs do not deny that their computation of damages disclosures did not include specific monetary damages for the trademark infringement claim, and they did not clearly point to any type of actual damages that they were not required to disclose with their computation of damages under Rule 26(a)(1)(A)(iii). Thus, Defendants' motion is granted to the extent that Plaintiffs shall not be permitted to introduce any undisclosed actual damages evidence.

This ruling shall not preclude Plaintiffs from pursuing the main remedy they seek on the trademark claims: disgorgement of profits. Plaintiffs' damages expert, David Duffus, focuses not on actual damages for the trademark infringement claims but on the *equitable* remedy of disgorgement of profits that Defendants made while using the allegedly infringing marks. The Lanham Act provides for the equitable remedy of an accounting and disgorgement of profits because "actual damages are often difficult to prove" in trademark infringement cases. *Hard Candy, LLC v. Anastasia*

11

*Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019); *accord* 15 U.S.C. § 1117(a).

## VII. Defendants' Motion to Exclude David Duffus (ECF Nos. 237 & 238)

David Duffus is a certified public accountant who offers opinions on Plaintiffs' damages. Defendants seek to exclude his testimony on (1) future lot profits on Phase C lots, (2) interest on the Land Purchase Agreement deposit to which Plaintiffs claim they are entitled, and (3) trademark disgorgement.[4]

On the LPA deposit interest issue, Defendants argue that the Court should exclude evidence of a deposit refund remedy under the LPA and that if the Court excludes that evidence, then Duffus's opinion on interest would be moot. As discussed above, though, the Court denied the motion to exclude such evidence. Defendants' motion to exclude the interest opinion is denied. On the trademark disgorgement issue, Defendants contend that Duffus's opinion does not fit the case because it improperly includes damages for time when Defendants were permitted to use Plaintiffs' marks. The Court finds that this issue goes to the weight of Duffus's testimony, not its admissibility. The motion to exclude on this ground is denied.

---

[4] Defendants also sought to exclude Duffus's testimony on issues that are now moot because of Plaintiff's decision to elect damages instead of specific performance and Plaintiffs' decision to seek only nominal damages on Count 1.

Defendants also object to Duffus's opinions on lost profits; they contend that Plaintiffs cannot recover lost future profits as a matter of law. Georgia law allows lost profits as a measure of contract damages if they can be shown with reasonable certainty. *McDermott v. Middle E. Carpet Co.*, 811 F.2d 1422, 1426-27 (11th Cir. 1987) (per curiam) (applying Georgia law). So, "where the type of business and history of profits make the calculation of profits reasonably ascertainable, evidence of lost profits may be considered." *Id.* (quoting *Moultrie Farm Ctr., Inc. v. Sparkman*, 320 S.E.2d 863, 866 (Ga. Ct. App. 1984)). While Georgia courts do not permit lost profits to unestablished businesses or businesses that have only posted losses, lost profits are recoverable if the business has a proven track record of profitability and can present evidence of both profits and expenses. *Id.* at 1428 (finding sufficient evidence of track record of profitability to support lost profits); *accord Am. Infoage, LLC v. Only Sol. Software, LLC*, 870 S.E.2d 47, 51 (Ga. Ct. App. 2022) (finding that the plaintiff had no track record of profitability because it was only in business for five months and had no history of profitability); *see also SMD, L.L.P. v. City of Roswell*, 555 S.E.2d 813, 816 (Ga. Ct. App. 2001) (finding that a billboard company had no track record of profitability because although it had existed for three years, it had not "actually erected or operated a single billboard").

Here, the Court is satisfied that the present record would permit a reasonable juror to conclude that Plaintiffs have a track record of profitability.  Therefore, Plaintiffs shall be permitted to introduce evidence of lost profits.  That evidence may include the testimony of Duffus, who asserts that he employed standard lost profits methodology regularly used by accountants.  The Court considered Defendants' other objections to Duffus's lost profits analysis and finds that they go to the weight of his testimony, not its admissibility.  For these reasons, Defendants' motion to exclude the testimony of David Duffus is denied.

**VIII.    Deposition Designations**

Defendants notified the Court that Jason Betts and Kathy Long are not unavailable within the meaning of Federal Rule of Civil Procedure 32.  Based on the parties' representations, the following witnesses are either unavailable or their depositions are otherwise permitted under Rule 32: Greg Benson, Marshall Coleman, Sean Coleman, Anthony DeZinna, Charles McClure, Stephen Pehrkon, Ryan Twiss, and Shawn Vialet.  The Court issued a text order earlier today indicating how it will address objections to this testimony.

CONCLUSION

As discussed above, the Court grants Plaintiffs' motion in limine regarding the fifth amended LLC agreement (ECF No. 218), grants in part and denies in part Plaintiffs' motion in limine

regarding settlement communications (ECF No. 222), grants Plaintiffs' motion in limine regarding quantum meruit damages (ECF No. 224), grants in part and denies in part Defendants' omnibus motion in limine on the issues discussed above (ECF No. 227; all other issues were addressed at the pretrial conference); and denies Defendants' motion to exclude David Duffus (ECF Nos. 237 & 238). All other pending motions were addressed at the pretrial conference and are terminated (ECF Nos. 216, 217, 219, 221, 244). Please see the transcript for details.

IT IS SO ORDERED, this 6th day of September, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA