IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
Columbus Division

AMERICAN SOUTHERN HOMES
HOLDINGS, LLC and ASH-
GRAYHAWK, LLC,

    Plaintiffs,

    v.                                        Case No: 4:21-cv-00095-CDL

DAVID B. ERICKSON, et al.,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFFS' MEMORANDUM OF LAW REGARDING
JOINT LIABILITY ON COUNT TWO**

Plaintiffs American Southern Homes Holdings, LLC ("ASHH") and ASH-Grayhawk, LLC ("ASH-GH" and, collectively with ASHH, "ASH") respectfully submit this memorandum of law regarding the joint liability of all remaining Defendants with respect to Count Two, alleging breach of the Land Purchase Agreement ("LPA"). In their motion for judgment as a matter of law, Defendants argued—without citing any legal authority—that ASH is required to "allocate" damages among the parties to the LPA in order to satisfy its burden. In essence, Defendants ask the Court to find that the parties to the LPA are only **severally** liable, but they are incorrect as a matter of law. It is a bedrock principle of contract law that when a contract binds multiple promisors, they are **jointly** liable unless the contract specifies otherwise. Under Georgia law, the LPA imposes joint liability, not several liability. Defendants have provided no legal basis to insist that pre-judgment apportionment of damages is required, and there is none.

## BACKGROUND

In its Count Two, ASH asserts a breach of contract claim against the parties bound by the Land Purchase Agreement ("LPA"). The LPA applies to the various Defendants in a variety of ways. First, the LPA was entered into by "DAVID B. ERICKSON, individually and on behalf of all **Selling Entities**" and "ROSE ANNE ERICKSON, individually and on behalf of all **Selling Entities**."[1] (PX-246-E, LPA at Recitals (emphasis added).) "Selling Entities" is defined to include Grayhawk Homes, Inc. (now GH Lot Holdings, Inc.), Homestead Residential, Inc., and GH Services, Inc.—the entities whose assets ASH acquired under the Asset Purchase Agreement. (*Id.*)

As he testified on September 20, Mr. Erickson executed the LPA on behalf of "David Erickson, Individually and on behalf of all **Sellers.**" (*Id.* at p. 13 (emphasis added); 9/20/2023 Rough Tr. at 205.) The term Seller is defined as follows:

> WHEREAS, the APA requires that D. Erickson and R. Erickson, the Selling Entities, and any other entity owned or controlled by Erickson for purchasing and developing residential land, including but not limited to Tiger Creek Development, Inc., Cusseta Road, LLC, Grey Rock Development, LLC, Windsong Bonacre, LLC, Erickson Investments, Inc., and Sage Development, Inc. (collectively, "**Seller**") will, after Closing under the APA, provide residential building lots ("**Lots**") to Buyer and that the Lots are currently comprised of (a) Lots that have been fully developed and finished ("**Finished Lots**") and that are listed on **Exhibit A** attached to this Agreement (sometimes referred to as the "**Phase A Lots**"), (b) Lots that are being developed and will be considered to be Finished Lots within 12 months after the date of this Agreement, that have an established purchase price agreed to by Seller and that are listed on **Exhibit B** attached to this Agreement (sometimes referred to as the "**Phase B Lots**"), and (c) real property or Lots that Seller either has purchased or has a right to purchase and that will be developed into Finished Lots, but for which a purchase price has not yet been determined, and that are listed on **Exhibit C** attached to this Agreement (sometimes referred to as the "**Phase C Lots**"). The list of

---

[1] The Court granted a motion to dismiss Rose Anne Erickson, who also signed the LPA both "individually and on behalf of all Selling Entities." The Court determined that the Complaint failed to allege facts sufficient to state a claim against her, including that she owned land at issue in the case, stating that Mrs. Erickson "was binding herself individually to perform the obligations with regard to the lots that she owned." (Dkt. 122.) Mrs. Erickson does not own any Phase C lots—the only lots for which ASH seeks to establish liability or damages at trial.

Thus, Mr. Erickson, and all of the entities described in the LPA, are bound by the terms of the LPA. ASH refers to David Erickson, the "Selling Entities," and the "Sellers" collectively as the "LPA Sellers."

The term "Seller" is used throughout the LPA to describe the parties' obligations—without distinguishing between Mr. Erickson or his entities. This includes "Seller's" obligations to develop and deliver lots to ASH under Sections 6 and 20 of the LPA:

> 6. Seller is required to develop the Lots in accordance with this Agreement and to meet the requirement of the Takedown Schedule (defined below). Starting with the calendar quarter ending on December 31, 2019, Buyer agrees to purchase from Seller the number of Lots set forth on the Lot takedown schedule attached as **Schedule 1** to this Agreement (the "**Takedown Schedule**"). The number of Lots shown on the Takedown Schedule represents the

It also includes the parties' mutual obligation to agree to an order of Phase C lot development:

> 10. Seller is required to develop the Lots in accordance with this Agreement and to satisfy the requirements of the Takedown Schedule. However, as to the Phase C Lots, during the first full year after the Closing under the APA, the Parties shall agree to the order in which specific Phase C Lots will be developed. In addition, the Parties may mutually agree to eliminate some of the Phase C Lots shown on **Exhibit C**.

Importantly, this also includes payment of the $2.5 million deposit under the LPA, which was required to be paid generally to "Seller":

> 4. In accordance with the APA, Buyer will deposit with Seller as of the date of this Agreement, the sum of Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00) (the "**Deposit**") as deposit for the Finished Lots subject to this Agreement. The Deposit shall be credited to Buyer pro-rata as to only the Phase C Lots as follows:

Other than identifying the entities in the initial Recitals, the LPA does not differentiate between the obligations of Mr. Erickson or any of the Defendant entities.

## APPLICABLE LAW

Under Georgia law, where multiple parties have promised the same performance, the parties are presumed to be jointly liable for a breach of the contract: "**Unless otherwise stipulated, the common promises of several persons are presumed to be joint obligations.** . . . In an action ex contractu against two or more joint contractors, the recovery must be upon their joint liability."

3

*Turner Outdoor Advert., Ltd. v. Old S. Corp.*, 365 S.E.2d 149, 150 (Ga. Ct. App. 1988), *rev'd on other grounds by Parsons v. Mertz*, 740 S.E.2d 743 (Ga. Ct. App. 2013) (emphasis added); *see also Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.,* 95 F.R.D. 328, 330 (S.D. Ga. 1982), *aff'd*, 704 F.2d 585 (11th Cir. 1983) ("**Promises of several persons are**, in the absence of statute, **presumed to be joint and not several, nor joint and several, unless an intention to the contrary is shown in the instrument**.") (emphasis added); *Willingham, Wright & Covington v. Glover*, 111 S.E. 206, 207 (Ga. Ct. App. 1922) (where defendants "act in furtherance of a common purpose and for a benefit common to all, **the contract must be taken as controlled by the general legal presumption that such an obligation is joint**") (emphasis added).

For example, in *Turner*, the Georgia Court of Appeals found that the obligation among the parties was joint where all the promises were worded jointly, stating that "we agree to pay" or "we (the undersigned)…" *Turner*, 365 S.E.2d at 150; *see also Spiegel v. Hays*, 119 S.E.2d 123, 128 (Ga. Ct. App. 1961) (liability on a contract between plaintiff and three defendants was "joint and not joint and several"); *Hudgins v. Bacon*, 321 S.E.2d 359, 366 (Ga. Ct. App. 1984) (real estate investor and builder were joint obligors on contract to build home).

This presumption is consistent with the common law of contracts:

> In the absence of statute, **the liability of two or more promisors upon the same contract is a joint liability if the rest of the contract does not show that a different liability was intended**.  The rule followed in most jurisdictions is that an obligation entered into by more than one person is presumed to be joint and **that a several responsibility will not arise except by words of severance**.

17A Am. Jur. 2d Contracts § 410 (2d. Ed.).  For example, the Fifth Circuit examined a contract that was signed by several parties, each of which were "individually a 'Seller' and collectively, the 'Sellers.'" *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 152 (5th Cir. 2013).  The court determined that the obligation was joint, and "[t]he enforcement of a joint obligation

4

against several parties must necessarily lead to a verdict and judgment which are joint in their nature." *Id.*

Generally, the presumption that an obligation undertaken by multiple promisors is joint can be overcome only if (1) there are express words to render the obligation several (or joint and several); (2) "the terms of the promise considered in light of the surrounding circumstances indicate an intent to be bound severally, or jointly and severally;" or (3) there is an applicable statute. 12 Williston on Contracts § 36:4 (4th ed.)

## ARGUMENT

Mr. Erickson and all of the entities bound by the LPA are jointly liable for any breach of the LPA as parties to that contract.[2] Damages need not be allocated to each jointly liable Defendant, because the contract makes clear that they have undertaken joint obligations and does not state that they are severally liable. Thus, the Court should reject Defendants' proposed verdict form, which would require the jury to make findings separately as to Mr. Erickson individually and each of the entities identified in the LPA with respect to liability and damages.

There is no statute in Georgia governing joint, several, or joint and several liability for non-commercial contracts. Nothing in the LPA suggests that the LPA Sellers' obligations are several, requiring disaggregation of damages for each Defendant. As above, after defining the term on the first page, the collective "Seller" is used throughout **the entirety of the LPA** to describe the LPA Sellers' obligations. ASH is required to "deposit with Seller" $2.5 million for the lots (PX-246-E, LPA § 4) and "Seller is required to develop the Lots in accordance with this Agreement and to meet the requirement of the Takedown Schedule" (*id.* §§ 6, 10). In addition, "Seller" makes a

---

[2] Mr. Erickson is liable, as he is a party to the LPA like any of the other LPA Sellers. In addition, Mr. Erickson individually owns Phase C lots. (PX-246-E, LPA at Ex. C.)

5

series of representations and warranties in the LPA. (*Id.* § 17.) The LPA does not contain any words of severance, or any other indication that the LPA Sellers' obligations are anything but joint. *See Brackin Tie, Lumber & Chip Co*, 95 F.R.D. at 331 (contract stating that the "lessees agree to pay" "clearly evince[s] an intention of the lessees to be jointly bound under the contract").

Moreover, the evidence at trial supports the conclusion that the obligations of the LPA Sellers are joint. As Mr. Erickson testified, he "own[s]," "control[s]," or has "management responsibilities" for all of the companies that are LPA Sellers and uses those companies "primarily . . . for residential land development." (9/30/2023 Rough Tr. at 205-06). The fact witnesses (including employees of Mr. Erickson and his companies and witnesses that Defendants called) have referred to Mr. Erickson and the LPA Sellers in a collective manner, without differentiating between the various Defendants. Even the Defendants refer to the parties at issue as "David B. Erickson and [] his companies." (*E.g.*, Dkt. 223, Defs. Proposed Jury Instruction No. 1.)

ASH had a right to buy lots from all of the LPA Sellers, and the LPA Sellers were obligated to deliver lots under the Takedown Schedule. There is **no** evidence that Mr. Erickson or any of the LPA Sellers developed or offered Phase C lots to ASH since December 2021 (except for C lots delivered pursuant to the Preliminary Injunction). Each and every one of the LPA Sellers caused the breach of the LPA, and each and every one is jointly liable.

As a practical matter, the ownership of the Phase C lots by "David B. Erickson and [] his companies" was not set in stone in the LPA. (*See* PX-246-E at Ex. C). Thus, pre-judgment apportionment is inconsistent with the joint obligations of the LPA Sellers and impractical. For example, Amy Allen testified that Windsong Bonacre, LLC sold some of its Phase C lots to Tiger Creek Development at some point after the LPA. (9/21/2023 Hr'g Tr. at 129.) Even the LPA Sellers do not have clear or separate corporate structures—as Ms. Allen testified, "how do you

know what money is what?" (9/21/2023 Hr'g Tr. at 199.) *See Prospect Energy Corp. v. Dallas Gas Partners, LP*, 2011 WL 843908, at *2 (S.D. Tex. Mar. 8, 2011) (concluding "there is no legal basis for apportioning liability" because "liability is based on the breach of a single contract to which all Defendants were signatories and they were all bound by its joint promise").

At a minimum, the LPA could be interpreted to impose joint and several liability on the various LPA Sellers.[3] "A joint and several contract is a contract with each promisor and a joint contract with all; therefore in a joint and several contract there is one more contract than there are promisors." *CCE Fed. Credit Union v. Chesser*, 258 S.E.2d 2, 5 (Ga. Ct. App. 1979).

In that event, judgment would still be entered against all of the LPA Sellers collectively. The respective obligations of each LPA Seller would then become a matter of enforcing the judgment. If the obligations are joint and several, ASH may collect from the LPA Sellers jointly and severally or pursue any of the LPA Sellers alone, until the judgment is satisfied. *See* O.C.G.A. § 9-2-4 ("A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them.")

For all of these reasons, Defendants respectfully submit that the Court reject Defendants' suggestion that damages must be allocated among the LPA Sellers. Defendants have offered no legal authority to support this position, which would be inconsistent with bedrock principles of contract law and Georgia law.

---

[3] Typically, joint and several liability needs to be evident from the contract itself—unlike the LPA. *See Spalding Ford Lincoln-Mercury, Inc. v. Turner Broad. Sys., Inc.*, 415 S.E.2d 26, 28 (Ga. Ct. App. 1992) (contract said "the advertiser and advertising agency acknowledge and assume full responsibility, jointly and severally. . ."); *Canal Indus., Inc. v. Childs*, 823 F.2d 460 (11th Circ. 1987) (where parties jointly executed contract, they were jointly and severally liable).

Dated:  September 22, 2023                    Respectfully submitted,

*/s/ Jacob A. Kramer*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Jacob A. Kramer (admitted *pro hac vice*)
Jessica R. Maziarz (admitted *pro hac vice*)
Rachel A. Beck (admitted *pro hac vice*)
Alison M. Agnew (admitted *pro hac vice*)
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 230-5289
E-mail:  jake.kramer@faegredrinker.com
E-mail:  jessica.maziarz@faegredrinker.com
E-mail:  rachel.beck@faegredrinker.com
E-mail:  alison.agnew@faegredrinker.com

David R. Merritt (admitted *pro hac vice*)
Drew M. Horwood (admitted *pro hac vice*)
Joshua T. Peterson (admitted *pro hac vice*)
2200 Wells Fargo Center, 90 South 7th Street
Minneapolis, Minnesota 55402
Telephone:  (612) 766-7000
E-mail:  david.merritt@faegredrinker.com
E-mail:  drew.horwood@faegredrinker.com
E-mail:  josh.peterson@faegredrinker.com

**BUCHANAN LAW FIRM, PC**

Jerry A. Buchanan (Ga. Bar No. 092200)
P.O. Box 2848
The Corporate Center, Suite 614
233 12th Street
Columbus, Georgia 31902
Telephone: (762) 208-6982
E-mail: jab@thebuchananlawfirm.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 22, 2023, I electronically filed the foregoing Plaintiffs' Memorandum of Law Regarding Joint Liability on Count Two with the Clerk of the Court using the CM/ECF system for filing and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter.

*/s/ Jacob A. Kramer*